[Civ. No. 1603.   Third Appellate District.—January 20, 1917.]

## COUNTY OF MODOC, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION OF THE STATE OF CALIFORNIA, Respondent; OTTO LYTLE, Applicant.

WORKMEN'S COMPENSATION ACT—REVIEW OF AWARD—EXTENT OF INQUIRY—JURISDICTION.—Upon an application for a writ of review to annul an order of the Industrial Accident Commission awarding compensation for injuries received in an accident claimed to have occurred in the course of employment, the inquiry can extend only to the question of jurisdiction, but if there is no substantial evidence to support a material finding of the commission the award must be set aside and annulled.

ID.—INJURY TO LABORER—DRIVING OF TEAM—TEMPORARY EXCHANGE OF LABOR—ANNULMENT OF AWARD.—An award of compensation for injuries received by a laborer while driving a team hauling a gravel wagon during a temporary exchange of work with the teamster, must be annulled for lack of evidence to support the finding of the commission that the injury arose out of and in the course of employment, where it appears from the testimony of the applicant that he was employed to do the work of a laborer in shoveling gravel, and, from other testimony, that the custom of occasionally exchanging work between teamsters and shovelers was unknown to their employer.

ID.—CUSTOM—COURSE OF CONDUCT—ESSENTIALS.—Before an alleged course of conduct can be legally held to have developed into a custom, it must be of such general and continuous practice among those engaged in the work as to constitute a regular course of conduct, and an occasional and sporadic departure from the usual and prescribed course of procedure among a part only of those to whom the custom is attributed does not meet the requirement of the rule.

APPLICATION for a Writ of Review originally made to the District Court of Appeal for the Third Appellate District to annul an order of the Industrial Accident Commission awarding compensation for injuries.

The facts are stated in the opinion of the court.

Daly B. Robnett, for Petitioner.

Christopher M. Bradley, and Warren H. Pillsbury, for Respondent.

THE COURT.—The application is for a writ of review to annul an order of said commission awarding compensation to said applicant for injuries received in an accident claimed to have been "in the course of, incidental to, and growing out of his employment" by said county.

There is no real controversy as to the law. It is conceded that the inquiry here can extend only to the question of jurisdiction, and that if there is no substantial evidence to support a material finding of the commission the award must be set aside and annulled. (*Great Western Power Co.* v. *Pillsbury*, 170 Cal. 180, [149 Pac. 35, 9 N. C. C. A. 466]; *Employers' Assur. Corp.* v. *Industrial Accident Commission et al.*, 170 Cal. 800, [151 Pac. 423].)

It is also not disputed that the question of whether the accident occurred in the course of the employment involves a vital jurisdictional consideration, and it may be stated in the language of the county that "the principal question upon which petitioner relies for an annulment of the award in this case is that there is no evidence to support the finding that the accident arose out of and in the course of employment or while the injured employee was performing a service growing out of or incidental to the employment," as contemplated and required by section 12 of the Workmen's Compensation, Insurance and Safety Act (Stats. 1913, p. 283), providing as an essential condition of the liability that "at the time of the accident, the employee is performing service growing out of and incidental to his employment and is acting within the course of his employment as such."

A careful reading of the record compels, in our opinion, a conclusion in harmony with petitioner's said contention. It can hardly be gainsaid that the applicant was employed as a laborer to shovel gravel, and it is admitted that he was injured while driving a team. As to this, the finding of the commission is that "while driving a team hauling a gravel wagon, the team became frightened, and applicant was thrown from the

wagon, sustaining a fracture of the neck of the femur of the left leg; that there was no specific duty assigned to applicant in his said employment; that he had started his work as a shoveler, but later changed places with a teamster, his injury occurring while driving a team; that it was customary for teamsters and shovelers to exchange as applicant had done, and therefore that applicant was acting in the course of his employment when injured."

It is true that the applicant testified that he was not assigned specifically to any particular kind of work, but there can be no doubt from his testimony that he understood he was to shovel gravel. He said he was up at the pit and he asked the supervisor if he needed any help and the latter said: "Yes, come up in the morning. He said for me to come up there and go to work. I was right there. Nothing was said about what work I was to do. I started loading wagons, shoveling gravel." He worked at that till about 3 o'clock in the afternoon when one of the teamsters, who had been out in the rain, wanted to get warm and requested applicant to exchange with him, and in coming back on the first trip the team ran away and the driver was thrown out, resulting in the injury as before stated. At the time of the investigation before the commission the following statement was made by the applicant's attorney: "We admit that that statement is a mistake, and that at the time of the accident he was not employed as a teamster." It appears also that the applicant, as is required by law, filed with the board of supervisors a verified claim for the wages due him, specifying the kind of work as "shoveling gravel." The father of applicant testified that he had a conversation with the supervisor at said pit as follows: "He says, 'Where is your other boy?' I said, 'Down home.' He said, 'What is he doing?' I said, 'He is not doing anything at the present time.' He said, 'Well, we could use another man up here at the present time, at the pit.' . . . He said, 'Tell him to come up in the morning.' I went home and told Otto to come down. . . . He said for me to tell the boy to come up and he could go to work. I would not swear definitely; he may have said 'come and go to work in the pit' or 'go to work,' but he said he would put him to work, that was all there was to it."

It also appears in the record that the custom as to work on the road was to employ the number of men and teams re-

quired, each man to furnish and drive his own team, and in addition the number of laborers that might be required and all were sent to a certain place to engage in work.

We think there can be no doubt that while the expression of the nature and character of the work might have been more precise and complete, it was understood that the applicant was to do the work of a laborer in shoveling gravel. If so, it needs no argument to reach the conclusion that in driving a team he was acting outside of the scope of his employment, and that the accident did not arise "out of and in the course of employment." Indeed, to hold that the beneficent provisions of the compensation act apply to this case, we must place upon the acts and declarations of the parties an unnatural and unreasonable construction. The commissioners saw the difficulty, and, in their commendable zeal to favor as far as possible the claim of the applicant, sought to bring the case within the operation of the law by finding that a custom existed as to exchange of labor. As to this it may be said that the evidence hardly amounts to proof of such custom. There was some showing that occasionally the employees did exchange work. The applicant himself, in response to the question: "Do you know whether it is common for men to change work in that way?" answered, "Well, they had done it before." Mr. Goodwin, with whom the exchange was made, testified that he did not know that it was common "for men to exchange work in that way."

It is undoubtedly true that before an alleged course of conduct can be legally held to have developed into a "custom" it must be of such general and continuous practice among those engaged in the work as to constitute a regular course of conduct, and an occasional and sporadic departure from the usual and prescribed course of procedure among a part only of those to whom the custom is attributed does not meet the requirement of the rule. Besides, it does not appear that the employer had any knowledge or notice of any such custom, and he cannot be bound in absence of knowledge of the custom. Mr. Fritz, the supervisor, who, it is claimed, employed the applicant, testified that he did not recognize any such custom, and that it was understood in that kind of work what each man should do, and that he was not expected to exchange with anyone doing a different kind of work.

Authorities are cited to the effect that a custom or usage, in order to have any binding effect, must be certain, well known, long established and acquiesced in. The proposition is virtually conceded and we need not dwell upon it. We may call attention, however, to the quite recent case of *Pacific Coast Casualty Co.* v. *Pillsbury et al.*, 31 Cal. App. 701, [162 Pac. 1040], wherein it was contended that, by reason of a certain custom of the employees in using a freight elevator for going to and returning from the office in which they were employed, the applicant was justified in thus departing from the instructions given him not to use such elevator. The court emphasized the importance of the circumstance that there was a failure to show that "these instances of the disregard of the instructions and warnings on the part of the employees were ever brought to the notice of the employer." It would, indeed, be quite unreasonable to hold that such custom among the employees, unknown to and unrecognized by the employer, would or could operate to change one kind of employment into another, so as to render the accident compensable notwithstanding it was not incidental to or in the course of the work for which the injured person was employed.

The law itself is a piece of humane and beneficent legislation that should be upheld and accorded a liberal interpretation. The present case, it may be said also, makes a strong appeal to sympathetic consideration, but applying the terms of the law to the facts disclosed by the record, it clearly appears that there is no legal ground for the relief sought.

We need not review the many cases cited as analogous to this. They constitute interesting illustrations of the application of the principle, but it is manifest that each case must stand or fall according to its own peculiar facts. If investigation of the manner in which the subject has been treated by various courts should be desired, a guide to the examination may be found in the notes on page 464 of volume 1 of Honnold on Workmen's Compensation.

We think the award should be annulled and it is so ordered.