[Civ. No. 1696.   Third Appellate District.—September 11, 1917.]

## ELK GROVE UNION HIGH SCHOOL DISTRICT, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION OF THE STATE OF CALIFORNIA et al., Respondents; EDITH L. HOAG, Applicant.

WORKMEN'S COMPENSATION ACT — JURISDICTIONAL FACTS. — Under the Workmen's Compensation Act, the question whether the accident causing the injury complained of occurred or arose out of, and in the course of, the employment of the employee, as well as the question whether the accident was or was not the direct result of the willful misconduct of the injured party, involve jurisdictional facts.

ID.—SETTING ASIDE OF AWARD—CERTIORARI.—An award made by the Industrial Accident Commission which is unsupported by the evidence will be set aside by the courts, on *certiorari*, as involving an act in excess of the jurisdiction of the commission.

ID.—UPHOLDING OF AWARD—SUFFICIENCY OF EVIDENCE.—To justify the upholding of an award there must be sufficient competent evidence to support every jurisdictional fact essentially involved in the application for compensation.

ID.—INJURY ARISING OUT OF EMPLOYMENT.—An injury arises out of the employment when there exists a causal connection between the conditions under which the work is required to be performed and the resulting injury.

ID.—INJURY TO PUBLIC SCHOOL-TEACHER—REMOVAL OF OBSTRUCTION TO ·OBTAIN ACCESS TO BOOKCASE—INJURY ARISING OUT OF EMPLOYMENT.—An injury sustained by a public school-teacher while attempting to sufficiently move a section of desks and seats of great weight from in front of a bookcase in which the books used in the school were kept that she might obtain a book therefrom necessary for her to have in instructing her class is an injury arising out of, and sustained in the course of, her employment under the Workmen's Compensation Act.

APPLICATION for a Writ of Review originally made to the District Court of Appeal for the Third Appellate District to annul an award made by the Industrial Accident Commission.

The facts are stated in the opinion of the court.

H. B. Bradford, District Attorney, J. R. Hughes, Deputy District Attorney, and Stephen F. Otis, for Petitioner.

Christopher M. Bradley, for Respondents.

HART, J.—Upon the application of the petitioner, a writ of *certiorari* was issued by this court for the purpose of reviewing an award entered by the Industrial Accident Commission upon findings in favor of the applicant, Edith L. Hoag, that she had suffered physical injury while engaged in her employment as a teacher of the petitioner, and that such injury arose out of and in the course of such employment.

The principal or most important question submitted for decision here is whether the evidence does or does not support the finding that the accident whereby the applicant sustained the physical injury for which she was awarded compensation by the respondents arose out of, and in the course of, her employment as a teacher of the petitioner, Elk Grove Union High School.

Preliminarily to the examination of the question thus propounded, it may be well to restate the following legal propositions which have been settled by the decisions, with respect to the powers of the Industrial Accident Commission under the law creating that body: 1. That the question whether the accident causing the injury complained of occurred or arose out of, and in the course of, the employment of the applicant, as well as the question whether the accident was or was not the direct result of the willful misconduct of the injured party, involve jurisdictional facts; 2. That an award by the commission which is unsupported by the evidence will be set aside by the courts, on *certiorari*, as involving an act in excess of the jurisdiction of the commission; 3. That, to justify the upholding of an award, there must be sufficient competent evidence to support every jurisdictional fact essentially involved in the application for compensation. (*County of Mo-*

*doc* v. *Industrial Accident Commission,* 32 Cal. App. 548, [163 Pac. 685] ; *Northwestern Pac. R. R.* v. *Industrial Accident Commission,* 174 Cal. 297, [163 Pac. 1000] ; *Great Western Power Co.* v. *Pillsbury,* 170 Cal. 180, [149 Pac. 35, 9 N. C. C. A. 466] ; *Ocean Accident & Guar. Co.* v. *Industrial Accident Commission,* 173 Cal. 313, [L. R. A. 1917B, 336, 159 Pac. 1041] ; *Reck* v. *Whittlesberger,* 181 Mich. 463, [Ann. Cas. 1916C, 771, 148 N. W. 247] ; *International Harvester Co.* v. *Indiana Accident Commission,* 157 Wis. 167, [Ann. Cas. 1916B, 330, 147 N. W. 53] ; *In re Buckley,* 218 Mass. 354, [Ann. Cas. 1916B, 474, 105 N. E. 979] ; *Employers' Assurance Corporation* v. *Industrial Accident Commission,* 170 Cal. 800, [151 Pac. 423] ; *Fidelity and Deposit Co.* v. *Industrial Accident Commission,* 171 Cal. 728, [L. R. A. 1916D, 903, 154 Pac. 834] ; *Englebretson* v. *Industrial Accident Commission,* 170 Cal. 793, [151 Pac. 421, 10 N. C. C. A. 545] ; *Kimbol* v. *Industrial Accident Commission,* 173 Cal. 351, [Ann. Cas. 1917E, 312, L. R. A. 1917B, 595, 160 Pac. 150] ; Workmen's Compensation etc. Act (Stats. 1913), sec. 12, pp. 279, 283.)

The uncontradicted testimony in this case reveals these facts : That the applicant, Miss Edith L. Hoag, had been employed by the trustees of the petitioner, Elk Grove Union High School District, as a teacher therein. Her duties were to teach three classes in history, one in English, one in cooking, and one in hygiene. The social activities of the students were carried on in the school building. These affairs consisted of literary and dramatic entertainments and dancing parties. When any of these social diversions was given, it was necessary, of course, to remove the desks, seats, tables, and other furniture used for the purposes of the school from their proper and accustomed positions in the room in which the entertainment was to take place. On the evening of the second day of June, 1916, a dancing party was held in one of the rooms of the school building. To obtain the most available space for that purpose, the desks, seats, etc., were moved to various parts of the room, some of them being placed in front of and against the cases in which the books used in the school were kept. These cases were in sections and were placed one on top of another, and thus were made to form, practically, a single case.

On the opening of the school on the Monday morning following the occasion just referred to, the seats and desks were

still in the positions in which they had been placed preparatory to the carrying on of the dance on the preceding Friday night. Miss Hoag arrived at the school building on said Monday something near half an hour prior to 9 o'clock A. M., at which hour the school was to open. She suggested to some of the boys who had gathered in the room that they proceed to replace the seats in their proper positions in the room. "They moved one," testified Miss Hoag. "I was superintending them and I saw that I did not know very much about it . . . and then we decided to wait until Mr. Smith [principal of the school] came and let him move the rest." Immediately after the boys had, upon her suggestion, ceased further attempt to replace the seats and desks, Miss Hoag, having occasion to examine a certain book preparatory to taking up her class that morning upon the subject treated by said book, went to the bookcase to procure the same. She discovered that she could not open the case and so procure the particular book she then desired without moving from in front of the case one of the sections of desks and seats which had on the previous Friday been placed there to facilitate the dancing party held in the room on that evening. She thereupon, unaided by anyone, attempted to move the particular section which prevented her from opening the case, and for that purpose put her weight upon the desk and thus succeeded in moving it. Instantly she experienced a sudden, dull pain in her back and from this she suffered for the remainder of the three weeks of the school term. Although she made no complaint of her injury to the principal of the school or to the trustees thereof at any time during the remainder of the term, she did complain of her pain to one of her associate teachers and a student at the school, and, after sustaining the injury, refrained from further active participation in the social affairs of the school in which, prior to the accident, she had quite uniformly taken a lively and prominent part.

The injury from which Miss Hoag suffered by reason of the accident was in the spine and technically described by Dr. Baldwin, a specialist in orthopedic surgery, as a "dislocation of a lumbar sacral articular joint"—that is, the displacement of one of the smaller joints between the sacrum and the lumbar vertebrae—an injury requiring the placing of the patient in a plaster-paris cast.

Miss Hoag testified that, on occasions when, for the purposes of the social functions of the school, the desks were removed from their proper places in the schoolroom, the students usually replaced them, sometimes assisted by Mr. Smith, the principal; that she never knew of the janitor performing that duty; that the teachers were not expected to remove the desks on such occasions, or having been moved, to replace them in their proper positions in the room; that it was no part of her work to move or replace the desks.

Robert Nicholls, a trustee of the petitioner, school district, and P. B. Smith, principal of the school at the time of the employment of Miss Hoag as a teacher, each testified that she was employed wholly as a teacher, and that the removal of the desks and the performance of like duties in connection with the management of the school were not included within the scope of her employment; that the school had a janitor whose duty it was to do all janitor work, "but this one act of moving the seats the janitor did not do because the seats were too heavy to move without help." There was other testimony given by the trustees and by the principal and one of the associate teachers of Miss Hoag, that it was not within the duties of the subordinate teachers to see that the desks, when removed from their accustomed places in the rooms, were replaced or to take a hand in moving them. In fact, it may be stated that the fact that no such duty was cast upon Miss Hoag or any of the teachers may be accepted as fully established in this case.

S. R. Gage, a trustee of the district, testified that, assisted by other members of the board of trustees, he weighed one of the sections of seats and found it to weigh four hundred and fifty-eight pounds, and that all the other sections, save as to the number of seats of which they consisted (some consisting of five and others of seven seats), were in every respect precisely like the one weighed.

We have now given herein an abridged but accurate statement of all the facts brought to the attention of the accident board in this case.

As to what we esteem the pivotal question in this case, viz., whether the injury, as the evidence shows it to have occurred, arose out of and in the course of the applicant's employment, it may well first be observed that, while, as has been well said in the cases, it is not easy to give a comprehensive

definition of the words, "arising out of the employment," which shall actually embrace all cases within the act, and with precision exclude those not within its terms, it may nevertheless safely be laid down that an injury may be said to arise out of the employment when there exists a causal connection between the conditions under which the work is required to be performed and the resulting injury. (Kiser's Workmen's Compensation Acts, pp. 73, 74, and cases cited in the footnotes.) "A risk," continues the same author, in the same connection, "is incidental to the employment *when it belongs to or is connected with what a workman has to do in fulfilling his contract of service.* . . . There must be a causal connection between the employment and the injury, and the injury must be the rational consequence of some hazard connected with the employment." And at page 82 of the same work, the author announces this rule: "Where, at the time of the injury, the employee is engaged in a voluntary act not accepted by, or known to his employer *and outside of the duties for which he is employed,* the injury cannot be said to be in the course of his employment."

The proposition here, then, is whether the evidence discloses a causal connection between the conditions under which the act culminating in the injury to the applicant was done and her employment as a teacher, or, in other words, was the act in the performance of which the injury was sustained reasonably within the contract of employment? We think the answer must be in the affirmative.

Recapitulating briefly and in a general way the facts as they were discovered by the undisputed evidence, we find the situation here to be this: That connected with the school and for its purpose a library of books appropriate and necessary to the profession of teaching is maintained in the school and located in a room adjacent to that in which the applicant instructed her classes; that, on the Friday preceding the Monday on which the accident occurred, the desks were, preparatory to the carrying on of a dancing party on that night, moved from their proper positions in the room, and some of them stacked up in tiers near and against the sectional cases constituting the bookcase; that, on the Monday morning following that social event, and before and at the time school was opened for the day, these desks had not been returned to their proper positions in the room, but were still

stacked up against the case containing the books used by the teachers; that Miss Hoag was employed to teach some five or six branches of the school's curriculum, among which was medieval and modern history; that she had previously assigned to the class in history certain references in medieval history which were to be taken up and recited that morning. She reached the schoolroom at about half-past 8 o'clock A. M. on that day, and, desiring to refresh her memory upon the particular topics to which she was scheduled first to address her instruction that morning, went to the bookcase for the purpose of obtaining the book upon the text of which the lesson was to be founded. Finding the section of the case in which the book she desired and required for the prosecution of the work first in hand so barricaded by one of the sections of seats as to make it impossible for her to open the case and so procure the book, she put her weight on one end of the desk and thus succeeded in moving it from its position sufficiently to enable her to get into the case. In doing this act she suffered the injury complained of. These are the simple facts of the case, and their mere statement is sufficient to demonstrate that the applicant not only did what she had a right to do, but did what her duty as a teacher in the school required her to do, if, as the evidence clearly warranted the accident board in inferring was true, the book she desired was necessary for her use that morning in properly and intelligently instructing the history class over which she had control. If, while in the act of opening the bookcase under the usual or normal conditions, her object being to procure a book necessary to be used by her in instructing her classes, she had suffered a physical injury, no one would be found to say that the injury would not be one arising out of and in the course of her employment. We can discern no difference in such a situation and the one presented here. The unusual or adverse conditions under which she attempted to perform that part of her duty were not of her own creation, and if, to discharge in a proper way her duty as a teacher, it was necessary, as was clearly so, for her to remove those unusual conditions, then, as declared, she had the right and, indeed, it was her duty, to do so, and the risk so taken, if any, was necessarily incidental to her employment. Therefore, in the act of removing the section of seats, her fault, if any, lay, not in the fact that she transcended the scope

of her employment, but in the fact that she thus undertook a task, in furtherance of her duty, with which she found herself physically unable to cope. She might have acted imprudently in doing the act. She probably did. But a person is not to be denied compensation under the compensation act merely because his injury has been superinduced by mismanaging the duties of his employment, unless such mismanagement amounts to willful misconduct.

But counsel for the petitioner insist, and upon the proposition so urged they rest their entire argument against the validity of the applicant's claim that her injury was received out of and in the course of her employment, that, in moving the seats, Miss Hoag went beyond her duties and engaged in janitorial work—duties wholly foreign to her employment and which are peculiarly and exclusively those of a janitor. Counsel, according to our conception of the case as it was made by the proofs, have thus fallen into a misapprehension of the evidence.

Of course, it is true and very clear that it was no part of the duty of the applicant to move the seats or desks about from one place to another in the schoolroom. But, manifestly, when injured, Miss Hoag was not so engaged. As the evidence plainly shows, she was, when hurt, merely endeavoring to move a section of seats, not to its proper or accustomed place in the room, but only a sufficient distance from its position against the bookcase to enable her to reach into the case and so procure a book required to facilitate her school work that morning.

Some of the courts have gone so far as to hold that "if a workman departs temporarily from his usual vocation to perform an act necessary to be done by some one for his master, he does not cease to be acting in the course of his employment." (*Hartz* v. *Hartford Faience Co.*, 90 Conn. 539, [97 Atl. 1020].) But, in this case, as we have shown, we are not required to go that far. We may and, as is obvious, do rest our conclusion upon the proposition that the evidence shows that the act in the performance of which Miss Hoag sustained the injury was necessary to the fulfillment of her contract of service.

Counsel for the petitioner place much reliance on the case of *County of Modoc* v. *Industrial Accident Commission*, 32

Cal. App. 548, [163 Pac. 685], (decided by this court), as in support of their position that the act in the doing of which the applicant was injured was beyond the scope of her employment. They contend that between that case and this there is, as to the facts, a direct analogy. But it seems to us that the distinction between the two cases is marked and quite obvious. In the Modoc case, the applicant, at the request of a fellow-employee, engaged in doing an entirely different kind of work for the petitioner from that of the former, left the work which he was specially employed by the petitioner to do and temporarily took up the work of the said fellow-employee. While thus temporarily engaged, the applicant met with an accident in which he sustained the physical injuries for which he claimed and was awarded by the accident board compensation. The award was properly annulled by this court. Thus readily it will be perceived that there is, with respect to the facts, no resemblance between that case and the present. And the facts in the case of *Sherer & Co.* v. *Industrial Accident Commission* (Cal.), 166 Pac. 318, also cited by the petitioner, are, in all essential particulars, similar to those existing in the case of the *County of Modoc* v. *Industrial Accident Commission, supra.*

Other cases cited by the petitioner may likewise be differentiated from the present case, but it is conceived to be unnecessary and unimportant to give them specific attention herein.

The petitioner briefly urges the point that the award in this case cannot, in any event, be sustained, since it is patent, so the contention proceeds, in doing the act causing her injury, the applicant was guilty of willful misconduct.

In *Diestelhorst* v. *Industrial Accident Commission etc.,* 32 Cal. App. 771, [164 Pac. 44], this court, through Justice Burnett, exhaustively went into the question of what constitutes willful misconduct under the terms of the Workmen's Compensation Act. Many authorities are therein examined and numerous illustrations given of the application and nonapplication of the provision exempting an employer from liability because the injury for which compensation is sought is directly imputable to the willful misconduct of the claimant. We need not, therefore, enter into a discussion of that subject herein. It is enough to refer to that case and

add that we perceive nothing in the act of the applicant herein, as said act is shown to have been done by the evidence, which would justify us in declaring, as a matter of law, that, in doing it, the applicant was guilty of willful misconduct. She did or attempted an act which, under the circumstances, was quite the natural thing for her or any other person in like situation to do. As seen, it was necessary for her to have a particular book for her school work that morning, said book was in the bookcase, and the case was so obstructed by the desks that she could not get into it and procure the book without the removal of said obstruction. It is doubtless true, as one of the trustees testified, that the section of seats which she attempted to remove was of great weight, so much so, indeed, as to make it impossible, or, at the least inconvenient, for her to handle and move it; but it must be kept in mind that she only attempted to shove the section aside, and did not undertake to lift the entire section. It may further be suggested, as only an obvious proposition, however, that a person of ordinary strength might with comparative ease move from its resting place one end of a heavy article of considerable length and still be wholly unable to lift the entire article from its resting place at one and the same time. Miss Hoag evidently conceived that she was of sufficient strength, by a shoving movement, and the application of whatever physical force she possessed, to shift the section away from the bookcase sufficiently to enable her to open it and procure the book, but she doubtless either overestimated her own strength or underestimated the ponderousness of the section, it not being shown that she had previous knowledge of either the actual or approximate weight of the article. As above suggested, in doing or attempting to do the act, she might have been guilty of a want of good judgment. She might, indeed, have been somewhat negligent in that she omitted to make some investigation, preliminarily to attempting to move the section, to ascertain whether she was capable of handling it without exposing herself to a dangerous physical risk; but, even so, under the evidence as it appears in this record, it would still be giving free rein to one's imagination to hold that her act amounted to *willful* misconduct within the meaning or contemplation of the compensation act.

Our conclusion is that the findings upon which the award was planted are supported by the proofs, and accordingly the award is affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 8, 1917.