[L. A. No. 10001. In Bank.—January 4, 1928.]

INDEPENDENCE INDEMNITY CO., Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION OF THE STATE OF CALIFORNIA et al., Respondents.

Floyd T. Scheidell for Petitioner.

G. C. Faulkner for Respondents.

THE COURT.—*Certiorari* to review an award of the respondent Industrial Accident Commission. An application for adjustment of claim was filed with the respondent Commission on behalf of the father and dependent minor son of one Leo Loya, deceased. At the time of his death on January 3, 1926, the deceased was in the employ of the Southern Pacific Company as a member of a section crew operating upon the lines of said railroad in the vicinity of Los Angeles. After hearing it was found that the Southern Pacific Company was the general employer of the deceased and that the Wm. Fox Vaudeville Company was the special employer for whom he was rendering service when fatally injured. Petitioner, as insurance carrier of the Wm. Fox Vaudeville Company, was thereupon directed to pay the death benefit awarded to the minor son of deceased. No award was made in favor of the father, for it was found that he was neither wholly nor partially dependent upon the deceased for support. In this proceeding we are confronted by the question of whether or not the evidence adduced upon the hearing before the respondent Commission warrants and supports the finding of the relation of special employer and special employee at the time of the accident as between the Wm. Fox Vaudeville Company and Loya, the deceased. If this finding is without support in the record the order directing petitioner, as insurance carrier of the Wm. Fox Vaudeville Company, to pay the death benefit would be in excess of the Commission's jurisdiction.

It appears from the transcript that on the morning of January 3, 1926, the crew of laborers of which Loya was a member proceeded under orders of the Southern Pacific Company from their home base at Saugus, which lies between Los Angeles and Castaic, to Camulos, beyond Castaic, where they assisted in clearing a wreck on the line. This work having been completed the crew returned to Castaic and at approximately 1:30 P. M. of that day reported to the Wm. Fox Vaudeville Company, then on "location," for the filming of moving pictures. To secure certain train

scenes necessary to the completion of the picture being filmed the Fox company had previously arranged with the Southern Pacific Company to have present at Castaic a special moving picture train together with a gasoline operated motor-car to be used to transport the camera during the filming operations. As stated, this latter car with its crew reported at Castaic about 1:30 P. M. to the agents of the Fox company. The filming of the desired scenes consumed the greater part of the afternoon. At approximately 4 P. M. the crews of both the train and smaller car were dismissed by the assistant director of the film company. The latter crew, apparently under direction of the section gang foreman, thereupon proceeded towards Saugus, the home base. In some manner the small car became derailed during this trip and the deceased was thrown to the ground. The injuries received were such as to almost immediately cause his death. At or about the time arrangements were made for the use of the railroad facilities the film company, through an agent, executed a written instrument purporting to be an indemnification agreement whereby the Fox company agreed, in part, "To pay for any injury or damage that may occur to the property of the Southern Pacific Company or its employees through the use of its property by the undersigned which may be sustained by reason of any cause whatsoever, reasonable wear and tear excepted." Issue has arisen herein as to the validity and effect of this agreement. With the merits of this dispute we are not concerned, for the conclusion we have reached renders it unnecessary that we pass upon the validity of said agreement.

The sole question presented herein would seem to be whether the deceased at the time of his death was in the special employ of the Fox company so as to render its insurance carrier, petitioner, responsible under the provisions of the Workmen's Compensation Act. ■ It is now well settled in this state that an employee may at the same time be under a general and a special employer. (*Famous Players Lasky Corp.* v. *Industrial Acc. Com.*, 194 Cal. 134, 136 [34 A. L. R. 765, 228 Pac. 5] ; *Employers' L. A. Corp.* v. *Industrial Acc. Com.*, 179 Cal. 432, 438 [177 Pac. 273] ; *Diamond Drill Contracting Co.* v. *Industrial Acc. Com.*, 199 Cal. 694, 697 [250 Pac. 862].) The case of *Famous*

*Players Lasky Corp.* v. *Industrial Acc. Com., supra,* points out that such employee, may, so far as the provisions of the Workmen's Compensation Act are applicable, look to the one or to the other of such employers, or to both, for compensation for injuries due to occupational hazards. (See, also, *Employers' L. A. Corp.* v. *Industrial Acc. Com., supra; Pruitt* v. *Industrial Acc. Com.,* 189 Cal. 459 [209 Pac. 31]; *De Noyer* v. *Cavanaugh,* 221 N. Y. 273 [116 N. E. 992].) The authorities would seem to indicate, however, that for liability to attach to the special employer the injured person must have been at the time of the accident subject to the direction and control of such special employer, for it is this right to control and direct the activities of the employee that gives rise to the status of special employer. (*Famous Players Lasky Corp.* v. *Industrial Acc. Com., supra; Employers' L. A. Corp.* v. *Industrial Acc. Com., supra; Stacey Bros. etc. Co.* v. *Industrial Acc. Com.,* 197 Cal. 164, 169 [239 Pac. 1072]; *Scribner's Case,* 231 Mass. 132 [3 A. L. R. 1178, 120 N. E. 350]; *De Noyer* v. *Cavanaugh, supra; Pigeon* v. *Employers' L. A. Corp.,* 216 Mass. 51 [Ann. Cas. 1915A, 737, 102 N. E. 932, 933]; *Coughlan* v. *City of Cambridge,* 166 Mass. 268 [44 N. E. 218, 219].)

In the case of *Famous Players Lasky Corp.* v. *Industrial Acc. Com., supra,* it is declared that "where either by the terms of the contract or during the course of its performance the employee of the alleged independent contractor comes under the control and direction of the other party to such contract and suffers injury *in the course of and in consequence of such direction and control,* the relation of both general and special employer may be held to exist, and the injured employee has been held entitled to compensation from both the general and the special employer." (Italics added.) The opinion in that case also quotes approvingly from *De Noyer* v. *Cavanaugh, supra,* wherein it is stated: "If the men are under the exclusive control of the special employer in the performance of work which is a part of his business, they are, *for the time being,* his employees." (Italics ours.) We cannot accept the contention advanced by counsel for the respondent Commission that the "facts in the case at bar are almost four-square with those presented in the case of *Famous P. L. Corp.* v. *I. A. C.,*" *supra,* for in that case it very clearly appears that the claimant was

injured while performing under the immediate direction of the agents of the film company and during the actual filming of scenes. It is readily apparent, therefore, that at the very time of the accident there involved the relationship of special employer and employee existed and the award against the special employer was proper. The case of *Employers' L. A. Corp.* v. *Industrial Acc. Com.*, *supra*, approves the following test: "In determining whether, in a particular act, he is the servant of his original master or of the person to whom he has been furnished, the general test is whether the act is done in business of which the person is in control as a proprietor, so that he can at any time stop it or continue it, and determine the way in which it shall be done, not merely in reference to the result to be reached, but in reference to the method of reaching the result. . . . 'The test is whether, in the particular service which he is engaged to perform, he continues liable to the direction and control of his master, or becomes subject to that of the party to whom he is lent or hired.'" Following a review of the authorities the case of *Stacey Bros. etc. Co.* v. *Industrial Acc. Com.*, *supra*, states that "the real test of what constitutes special employment may be said to be found in the character of the control and supervision exercised by the alleged special employer over the work and the employee engaged in the doing of the same."

■ With these principles before us we experience no hesitancy in declaring to be without support in the record the finding to the effect that the relationship of special employer and employee existed as between the Wm. Fox Vaudeville Company and the deceased at the time of the accident. ■ Of course, the findings of the Industrial Accident Commission are subject to review only in so far as they have been made without any evidence whatever in support thereof. (*Southern Pacific Co.* v. *Industrial Acc. Com.*, 177 Cal. 378 [170 Pac. 822]; *Dearborn* v. *Industrial Acc. Com.*, 187 Cal. 591 [203 Pac. 112]; *Elk Grove Dist.* v. *Industrial Acc. Com.*, 34 Cal. App. 589, 590 [168 Pac. 392]). Our examination of the record has failed to disclose any evidence tending to show that the Fox company or its agents had or exerted any right of control or direction over the section crew on its return trip to Saugus. H. E. Pierson, district passenger agent of the Southern Pacific

Company, called on behalf of said company, and in response to a question whether the deceased was rendering any service to the film company at the time of the accident, testified that he could not say and that deceased "was en route home from the Fox company having performed services; we will put it that way." Again, he testified that deceased "*had been* employed in the afternoon by the Wm. Fox Company." (Italics added.) The agents of the Fox company very definitely testified that their work was finished at about 4 P. M., and that they "dismissed" both the train and section crew. There is absolutely nothing in the record before us to indicate that the agents of the film company either directed the crew to return to Saugus or exerted any control over their trip to that point. In fact, the record would seem to indicate that upon dismissal the section crew no longer remained subject to the control of the film company. Under these circumstances it must be held that the Commission exceeded its jurisdiction in determining that the film company continued in the status of special employer subsequent to such dismissal and relinquishment of the right of direction. We are not to be understood as holding, however, that at no time did the film company occupy the status of special employer. In our opinion that relationship sprung into existence and continued in force all during that period consumed in the filming of the pictures. In other words, from the time the crew reported to the Fox company at approximately 1:30 P. M. and until about 4 P. M., when they were dismissed, they were in the special employ of the film company and the general employ of the Southern Pacific Company. If at any time during that period the deceased had been injured the Commission unquestionably would have had jurisdiction, under the authorities, to award compensation as against either the general employer or the special employer, or both. But, as stated, upon its dismissal of the section crew at 4 P. M. the Fox company ceased to occupy the status of special employer and the award against its insurance carrier, petitioner herein, was without warrant and not within the jurisdiction of the Commission.

The only evidence which might seem to lend support to the contention that the deceased at the time of his death was still in the special employ of the Fox company

is in the form of a bill, introduced in evidence, presented by the Southern Pacific Company and paid by the Fox company. Certain witnesses called by the Southern Pacific Company testified that the amount stated in the bill represented, among other things, the time consumed by the section crew in returning to the home base at Saugus. It is argued that the payment of this bill by the film company is evidence that it regarded the deceased as an employee at the very time he met with his death. With this conclusion we cannot agree. The film company produced witnesses who testified, in effect, that the bill was paid without exact knowledge of its import and merely to satisfy the claim presented by the railroad company. This being so, it can hardly be said that the payment of the bill constituted an admission upon the part of the film company that the deceased was at the time of the accident in its special employ. ■ Moreover, it has been held that the mere payment of wages or salary, of itself, is insufficient to establish that the recipient thereof is the servant of the one paying the same. (*Arnett* v. *Hayes Wheel Co.,* 201 Mich. 67 [166 N. W. 957, 959].) From what has been said it is apparent that the deceased was not in the special employ of the Wm. Fox Vaudeville Company at the time he met with his untimely death. ■ It becomes unnecessary therefore to pass upon the validity or invalidity of the indemnification agreement, above referred to, for its execution was intended to place upon the Fox company only such liability as might accrue or attach pending its special use of the Southern Pacific Company's employees. In other words, the indemnification agreement was intended by the parties to relieve the railroad company of responsibility under the provisions of the Workmen's Compensation Act only while the film company exercised some measure of control over the employees of the former. As the accident causing the deceased's death occurred subsequent to the termination of the special employment, the Southern Pacific Company, as general employer, was, in our opinion, the one upon whom the burden of liquidating the award should have been placed. This conclusion precludes the necessity of determining whether, in a proper case, it is obligatory upon the Commission to give effect to an indemnification agreement existing between a general and a special

employer, assuming the same to have been properly executed. ▮ Of course, the Commission has power to determine all questions of law and fact upon which liability depends. (*Federal etc. Co.* v. *Industrial Acc. Com.*, 190 Cal. 97, 103 [210 Pac. 628].)

. For the foregoing reasons the award is annulled and the cause remanded to the respondent Commission for further proceedings in accordance with the views herein expressed.

SHENK, J.—I dissent. The Industrial Accident Commission found that the Wm. Fox Vaudeville Company was the special employer of Loya at the time of his fatal injury and rendered an award solely against the petitioner, which is the insurance carrier of that company. In my opinion the findings of the Commission and the award were amply supported by the evidence. The section crew of which the deceased was a member was sent out from Saugus to "location," with instructions to follow the directions of the Fox company in handling the motor-car from which the deceased was thrown to his death. When the day's work was completed the crew, including the deceased, was sent back to Saugus to the home base on this same motor-car. It was on the return trip to Saugus that the accident occurred. It was the duty of the deceased to assist the Fox company and return the motor-car to the general employer at Saugus. Until the motor was so returned the deceased was rendering service incidental to the work of the Fox company in carrying on its work and until such return the deceased was using the instrumentality provided by the Fox company in going to and from "location." In this respect the case comes within the rule approved by this court in *Makins* v. *Industrial Acc. Com.*, 198 Cal. 698 [49 A. L. R. 411, 247 Pac. 202, 203], wherein it was said on page 701: "The rule is well settled that an employee, in going to work, comes under the protection of the act when he enters the employer's premises or upon the means provided for access thereto, though the premises and such means of access are not wholly under the employer's control or management." The main opinion holds that under the evidence the motor-car and its crew had been dismissed and returned wholly to the sphere of the general employer. It applies in effect the "going and coming" rule to the

situation, but loses sight of the well-established exception to the general rule approved in the Makins case with supporting authorities. There are two sufficient reasons why the holding of the main opinion on this branch of the case is untenable. First, the evidence was conflicting as to whether the control of the crew on the part of the Fox company ceased before the crew reached Saugus. There was documentary evidence that the Fox company actually paid for the service of the crew of which the deceased was a member, until the crew arrived in Saugus. When the main opinion places over against the documentary evidence the oral statements of the witnesses for the Fox company that the bill for such services was paid without exact knowledge of its import, this court is placing itself in the position of weighing the evidence, a function left entirely to the Commission under the law. And, secondly, the "going and coming" rule was not invoked by the Fox company before the Commission, either by pleading or otherwise, on the original hearing or on rehearing. Under sections 8 (a) and 6 (c) of the act, this defense was waived.

There is a sufficient reason why the award might properly be affirmed as an award solely against the petitioner. The insurance policy executed by the petitioner contained a provision whereby the petitioner agreed with the Fox company to pay to any person entitled thereto under the Workmen's Compensation Law the entire amount due or to become due to such person because of any application for compensation *accepted by* the Fox company. In its contract with the general employer in this case, the Fox company agreed in writing to hold the general employer harmless from any liability for injury or damage from any cause which might accrue to the employees of the general employer during the progress of the work of the Fox company. The Commission undoubtedly relieved the general employer from its liability as such by reason of this contract. And I think the Commission was justified in so holding. The main opinion refuses to pass upon the effect of this contract, deeming it unnecessary to do so. I fail to see why this contract should not be given force and effect. The contention of the petitioner that the contract was not executed with the requisite authority should not be sustained. The contract was signed in the name of the

company under its corporate seal by an agent of the company having to do with the ordering of equipment and men, and by the same man claimed by the petitioner to have dismissed the crew at "location." Furthermore, it was stipulated that this same man had authority from the Fox company to engage the equipment which would include the small car from which the deceased fell. The petitioner is in no position to complain of the effect of such contract, for it expressly agreed to indemnify against liability assumed, as here, by the Fox company. (*Brooks* v. *A. A. Davis & Co.,* 124 Okl. 140 [254 Pac. 66].)

Rehearing denied.

Shenk, J., and Langdon, J., dissented.