[S. F. No. 11017. In Bank.—July 16, 1924.]

FAMOUS PLAYERS LASKY CORPORATION et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION OF THE STATE OF CALIFORNIA et al., Respondents.

[1] WORKMEN'S COMPENSATION ACT—INDEPENDENT CONTRACTORS—GENERAL AND SPECIAL EMPLOYERS—LIABILITY FOR INJURIES.—While it is the general rule that one contracting with an independent contractor for certain work is not liable for injuries to the employees of the latter, there is this important limitation to the rule that, where either by the terms of the contract or during the course of its performance the employee of the alleged independent contractor comes under the control and direction of the other party to such contract and suffers injury in the course of and in consequence of such direction and control, the relation of both general and special employer may be held to exist, and the injured employee may be entitled to compensation from both.

[2] ID.—LIABILITY OF SPECIAL EMPLOYER—EVIDENCE.—Where the evidence shows that a general employer furnished aeroplanes with pilots to make a flight in filming a scene for a moving picture, its instructions to the pilots being to proceed to the designated place and put themselves under the direction of the representatives of the other party as to the details of the flight, which was done, the general employer exercising no control over the pilots as to the details of the flight, the contracting party who directed the manner of conducting the flights was a special employer of the pilots and liable for injuries occurring to one of the pilots resulting from the falling of the aeroplane by being caught in an air pocket in a low flight.

1. Whether independent contractors, sub-contractors, and their employees are employees within the meaning of workmen's compensation acts, notes, Ann. Cas. 1918B, 708; L. R. A. 1916A, 118, 247; L. R. A. 1917D, 147; L. R. A. 1918F, 206. See, also, 13 Cal. Jur. 1013; 28 R. C. L. 762.

(1) Workmen's Compensation Acts, p. 50, sec. 41 (1926 Anno.).
(2) Workmen's Compensation Acts, p. 50, sec. 41 (1926 Anno.).

APPLICATION for a Writ of Certiorari to review an award of the Industrial Accident Commission of compensation for injuries. Award affirmed.

The facts are stated in the opinion of the court.

F. J. Creede, T. W. Slaven and J. L. Kearney for Petitioners.

Warren H. Pillsbury and Walter Christie for Respondents.

RICHARDS, J.—The petitioners herein apply for a writ of review whereby they seek to have reviewed and annulled a certain award made by the respondent Commission in favor of one Harvey M. Pugh for injuries alleged to have been received by the latter while acting under the special employment and direction of the petitioner Famous Players Lasky Corporation. There is no material dispute as to the facts out of and in connection with which the injuries suffered by said Pugh arose. In March, 1923, the Famous Players Lasky Corporation was engaged in producing a moving picture film upon the Monterey peninsula, in the course of which certain scenes were to be filmed at Pebble Beach near Carmel. It was deemed desirable by the representatives of the corporation to secure the use of two aeroplanes to fly within the range of the camera during these scenes in order to give the desired effect. In seeking to procure these aeroplanes the representatives of the corporation came into communication by telephone with the Williams Brothers Aircraft Corporation of San Francisco, which had at times operated a commercial flying field at San Carlos, but which was chiefly engaged in the business of the manufacture of aeroplane accessories and which had a few aeroplanes in stock at said place which were used by it mainly for experimental flights in testing out aeronautical devices and equipment. They had no pilots on their regular staff but when the request came from the Lasky Corporation they agreed to furnish them two aeroplanes for which they agreed to find pilots for a total charge of ninety dollars for the planes and pilots for the day. They accordingly sent the two aeroplanes, each with a pilot, one of which was Pugh, and each accompanied with a member of the Aircraft Corporation. The only direction given to the pilots was that they were to fly from the San Carlos field to a polo field at or near Del Monte, where they were to report to the Lasky Corporation for instructions. This they did, and after some

little delay were taken by the representatives of the Lasky Corporation over to the point at Pebble Beach where the scenes were being filmed and where their flight was to take place. Arriving there the pilots were directed by those in charge of the filming to look through the camera to get its range of vision and to direct their flight accordingly so as to come within the picture. This they did, but after making one trial flight and landing were told that their planes would have to fly farther out and lower in order to be in the picture. It was Pugh's better judgment that to fly lower would be dangerous but he finally yielded to the request of the representative of the Lasky Corporation to bring his flying down to seventy-five feet in order to come within the scene. While making this flight the plane struck an air pocket and crashed to the ground, killing the representative of Williams Brothers, who was a passenger with him, and seriously injuring Pugh. It would seem that after reaching the scene of the flight neither of the members of the Williams Aircraft Corporation exercised any control or direction over either of the pilots and all of their instructions as to the time, place, and method of their flight were given them by the representatives of the Lasky Corporation.

[1] The first contention of the petitioners herein is that the Williams Brothers Aircraft Corporation occupied toward the Lasky Corporation the relation of an independent contractor, supplying these aeroplanes with their pilots to the petitioner herein for a day's service and for a fixed price; that its employees were not the employees of the petitioner and hence that for whatever injuries their employee Pugh suffered in the course of that employment the petitioner herein cannot be held liable. That this is the general rule with respect to the employees of independent contractors there can be no doubt, but this general rule has this important limitation, where either by the terms of the contract or during the course of its performance the employee of the alleged independent contractor comes under the control and direction of the other party to such contract and suffers injury in the course of and in consequence of such direction and control, the relation of both general and special employer may be held to exist, and the injured employee has been held entitled to compensation from both the general and the special employer. This court had occasion to deal

with this subject and did so exhaustively in the case of *Employers Liability Assur. Corp.* v. *Industrial Acc. Com.*, 179 Cal. 432 [177 Pac. 273], and therein pointed out both the general principle and the limitation thereof and the reason for both, and also pointed out the distinction between that case and the case of *Western Indemnity Co.* v. *Pillsbury*, 172 Cal. 807 [159 Pac. 721], upon which the petitioner herein strongly relies, a distinction which has also application, we think, to the case at bar. In the case of *Employers Liability Assur. Corp.* v. *Industrial Acc. Com., supra*, this court quotes approvingly from the case of *De Noyer* v. *Cavanaugh*, 221 N. Y. 273 [116 N. E. 992], wherein that court in reconciling its decision in that case with the case of *Nolan* v. *Cranford*, 219 N. Y. 581 [114 N. E. 1074], said: "Even where no property of the general employer is entrusted to the employee to be used in the special employment, the general employer pays the compensation, may direct the employee when to go to work, and may discharge him for refusal to do the work of the special employer. The Industrial Commission, therefore, has full power to make an award against the general employer. It does not follow that by the application of this rule the special employer is not to be held in any case. The fact that a workman has a general and a special employer is not inconsistent with the relation of employer and employee between both of them and himself. If the men are under the exclusive control of the special employer in the performance of work which is a part of his business, they are, for the time being, his employees. (*Comerford's Case*, 224 Mass. 571, 573 [113 N. E. 460].) Thus at one and the same time they are generally the employees of the general employer and specially the employees of the special employer. As they may under the common law of master and servant look to the former for their wages and to the latter for damages for negligent injuries, so under the workmen's compensation law they may, so far as its provisions are applicable, look to the one or to the other, or to both, for compensation for injuries due to occupational hazards." This court further said in reference to the case from which the above excerpt is taken: "While we have heretofore held that an independent contractor is not entitled to compensation under the workmen's compensation law, we find nothing in our decisions which

would prevent our following the rule announced by the court of appeals of New York in the case of *De Noyer* v. *Cavanaugh, supra,* and recognizing the fact that in some cases where, at the time of the accident, both the general and special employer exerted some measure of control over the injured person through their respective foremen or employees, both should be held liable.'' In the more recent case of *Pruitt* v. *Industrial Acc. Com.,* 189 Cal. 459 [209 Pac. 31], this court, while recognizing the rule to be as above stated that where at the time of the accident both the general and the special employer exercised some measure of control over the injured employee, both should be held liable, held upon a review of the facts of that case that the applicant had not brought himself within the rule entitling him to hold the general employer but did uphold the award against the insurance carrier of the special employer. [2] The evidence in this proceeding substantially showed that the general employer of the applicant for an award contracted to supply two aeroplanes with pilots to go to the location of the petitioner herein, at or near Carmel, there to make a flight under the direction of the representatives of the petitioner while they were engaged in filming a scene for a moving picture; that such flight was to be conducted at such height and at such distance from the camera being used in filming the scene as would bring said planes within the range of said camera, thus forming "atmosphere" for the background of the scene; that while the pilots of said planes in going to said location and while making their flight thereat were accompanied by two officials of the Williams Brothers Aircraft Corporation, they gave to the pilots of said planes no other direction than that they should put themselves under the direction of the representatives of the petitioner herein as to the details of said flight; that while they doubtless might have vetoed the instructions given by petitioner, they did not do so, but rather tacitly concurred therewith; that from the time of the arrival of the pilots with their planes and passengers at the place where the flight was to be undertaken the pilots did in fact conduct both their flights under the direction of the representatives of the petitioner herein; that the first flight was unsuccessful for the reason that the planes flew too high and too near to come within the range of the camera, wherefore the peti-

tioner's representatives directed the pilots to make another flight lower and farther away than before. The pilots, after some demurring as between themselves upon the ground that such lower flight would be dangerous, but after no conference with or direction from the representatives of the general employer, obeyed the instruction of the representatives of the petitioner who were directing the filming of the scene and flew across its range of vision much nearer the surface than they themselves deemed safe, with the result that toward the close of the flight the plane which the pilot Pugh was driving was caught in an air pocket and crashed to the earth, killing the passenger and seriously injuring the pilot Pugh. We are of the opinion that these facts as shown in the record before us fully justify the application of the doctrine approved by this court in the cases above referred to holding that when the relation of both a general and a special employer is shown to exist, the award may be sustained as against both. In the case of the general employer such award has heretofore been upheld by this court. It will also be upheld in the case of the petitioner herein for the reasons above set forth.

The award is affirmed.

Myers, C. J., Waste, J., Shenk, J., Seawell, J., and Lawlor, J., concurred.