[S. F. No. 11590. In Bank.—September 28, 1925.]

## THE STACEY BROTHERS GAS CONSTRUCTION CO. (a Corporation) et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and ALMA M. SMITH et al., Respondents.

[S. F. No. 11591. In Bank.—September 28, 1925.]

## PACIFIC GAS AND ELECTRIC COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and ALMA M. SMITH et al., Respondents.

[1] WORKMEN'S COMPENSATION ACT—FINDINGS — EVIDENCE — CERTIORARI.—The findings of the Industrial Accident Commision are subject to review on *certiorari* only in so far as they have been made without any evidence whatever in support thereof; in short, if the facts show substantially without conflict that there is no evidence to support the finding, the Commission was without authority to make the same.

[2] ID. — SPECIAL EMPLOYMENT — CONTROL AND DIRECTION OVER EMPLOYEE.—To establish the legal relation of special employer and special employee it must appear that, either by the terms of the contract or during the course of its performance, the employee of the alleged independent contractor came under the control and direction of the other party to the contract and suffered injury as the result of such direction and control; and, when determining

1. Right and extent of review of findings of Industrial Accident Commission, note, L. R. A. 1917D, 186.

2. Liability of general or special employer for compensation to injured employee, notes, 3 A. L. R. 1181; 34 A. L. R. 768.

whether, in any given case, an employee is the servant of his original master or of a party to whom he has been furnished, the test is whether, in the particular service which he is engaged to perform, he continues liable to the direction and control of his master or becomes subject to that of the party to whom he is lent or hired.

[3] ID.—ERECTION OF DERRICK FOR INDEPENDENT CONTRACTOR—SUPERVISION AND CONTROL OVER CREW—EVIDENCE—FINDINGS.—In this proceeding to obtain an award of compensation, based upon death, in view of the evidence showing that, in the performance of the particular work of erecting a derrick which the general employer of the deceased was doing for an independent contractor, the deceased and his fellow-employees were under the supervision and control of the superintendent and the foreman of said general employer of the deceased, and that said foreman did not at any time recognize said independent contractor as having the power or the right to direct him as to the method and details of the work, and there being no evidence showing that said independent contractor at any time assumed to direct and control the operations of the crew engaged in doing the work, although, through its superintendent, it had given certain directions as to the location and character of the work, the Commission was not justified in finding that the relation of special employment existed between the deceased and said independent contractor.

[4] ID.—COMPLETE CONTROL BY GENERAL EMPLOYER—SOLE RESPONSIBILITY FOR DEATH.—In such proceeding, the complete and exclusive control and supervision over the crew engaged in erecting the derrick being shown to have been exercised by the general employer of the deceased, such employer must be held solely responsible for the death of an employee arising out of and in the course of such employment.

---

(1) Workmen's Compensation Acts, C. J., p. 122, n. 40.   (2) 39 C. J., p. 35, n. 23.   (3) Workmen's Compensation Acts, C. J., p. 115, n. 37.   (4) Workmen's Compensation Acts, C. J., p. 115, n. 37.

PROCEEDINGS in Certiorari to review an award of the Industrial Accident Commission.   Affirmed in part; reversed in part.

The facts are stated in the opinion of the court.

R. P. Wisecarver for Petitioners in S. F. No. 11590.

---

3.   Tests of existence of relation of master and servant, note, 37 L. R. A. 38.

Thos. J. Straub, J. J. Briare and L. W. Susman for Petitioners in S. F. No. 11591.

Warren H. Pillsbury for Respondents.

LENNON, J.—*Certiorari* directed to the Industrial Accident Commission to review an award to Alma M. Smith and her children against the Pacific Gas and Electric Company and the Federal Mutual Liability Insurance Company for the death of her husband, A. E. Smith, who died from injuries sustained in and arising out of the course of his employment. The Federal Mutual Liability Insurance Company, the insurance carriers for The Stacey Brothers Gas Construction Company, and the Pacific Gas and Electric Company, who are self-insurers, were both directed to pay the award. The Federal Mutual Liability Insurance Company, on behalf of The Stacey Brothers Gas Construction Company, and the Pacific Gas and Electric Company, on its own behalf, are the petitioners for the writ. Both petitioners seek exemption from the liability imposed by the award of the Industrial Accident Commission and claim that the Commission acted without and in excess of its power in entering the award against each of petitioners, respectively, in that the findings are not sustained by the evidence.

Generally stated, the facts as revealed by the record returned by the respondents are these: The Pacific Gas and Electric Company let a contract to The Stacey Brothers Gas Construction Company for the erection of a gas holder in the city of Santa Rosa. In the course of the construction of this gas holder it became necessary for the Stacey Company to erect a derrick in the center of said gas holder. The Stacey Company had neither the necessary tools nor the skilled labor required to do this part of the work and the Pacific Gas and Electric Company was requested to furnish the necessary timbers and its pole construction crew, to erect the derrick and remove same when its purpose had been accomplished. The Pacific Gas and Electric Company undertook to furnish the necessary poles, to erect them and remove them, charging the Stacey Company for the actual cost of the labor and the materials used and bill the same to them, less a credit for the value of the poles returned. The Pacific Gas and Electric Company have a printed form known as the

"D & C Tag" (deliver and charge), which is used when the company performs construction work on request for its patrons or others, such as running power lines, which the company does not furnish in the ordinary course of its service. This tag is used by officials of the company in directing their foremen to do the work requested. It was customary for the Pacific Gas and Electric Company, to do such work on request. It does not appear, however, that the particular crew of linemen directed to erect the derrick for the Stacey Company had ever before done this kind of work. The Pacific Gas and Electric Company superintendent gave one of the so-called "D & C Tags" to the foreman of its linemen's crew, directing him to erect the derrick. This foreman reported with his crew at the place where the gas holder was being constructed and erected the derrick. The work was done, it appears from the record, under the direct supervision of the Pacific Gas and Electric Company's foreman. There was no direction by the Stacey Company as to the method of doing the work nor did the Stacey Company exercise any control over the crew of linemen employed in the doing of the work. There were, however, a few general directions given by McPeake, the superintendent of the Stacey Company, concerning where the poles were to be erected, the number of clamps to be used and that the cable should be "dead ended" to insure the safety of the derrick. These suggestions were accepted by the Pacfic Gas and Electric Company's foreman, who directed the means of accomplishing the desired result. The method of erecting the poles and all the details incident thereto were under the complete control, at all times during the course of the work, of said Pacific Gas and Electric Company's foreman.

When the construction work was almost completed so that there was no further need of the derrick, the Stacey Company notified the Pacific Gas and Electric Company to have the poles removed. By means of a similar "D & C Tag," as was used in directing the foreman to erect the derrick, the Pacific Gas & Electric Company superintendent directed the foreman of the linemen's crew to dismantle the derrick. Under the direction of this foreman the said crew of linemen proceeded to take down the derrick. When the superintendent of the Stacey Company, McPeake, arrived and saw the dismantling in progress, he stopped the work for

a few minutes, as he was not decided where the poles should be placed when this work should be accomplished. After conferring with his foreman, McPeake notified the Pacific Gas and Electric Company foreman to "go ahead" and complete the job. McPeake then left the scene where the dismantling of the derrick was taking place. He took no further part in this work. The work of dismantling, which had been commenced under the immediate supervision and control of the Pacific Gas and Electric Company foreman, was continued in the same manner without any interference by anyone in behalf of the Stacey Company. The method of doing the work was left entirely to his discretion. During the course of the work of dismantling the derrick Smith, the deceased, was killed. He was in the employ of the Pacific Gas and Electric Company and was a member of the linemen's crew directed to dismantle the derrick. He was, at all times during the course of the work, under the direction and control of said company, through its foreman.

The findings of the Industrial Accident Commission, material to the issues here presented, are: That at the time of his death the said A. E. Smith was employed by the Pacific Gas and Electric Company, his general employer, and by The Stacey Brothers Gas Construction Company, his special employer; and that the injuries sustained occurred in the course of and arising out of his employment and caused his death. There is no dispute as to the correctness of the finding of the Commission that Smith's injuries were sustained in the course of and arising out of his employment.

Petitioner Federal Mutual Liability Insurance Company, on behalf of the Stacey Company, contends that the finding that the said company was the special employer of said Smith is not supported by the evidence. Respondent Industrial Accident Commission in answer to this contention urges that the arrangement between the Pacific Gas and Electric Company and the Stacey Company was a mere loan by the former of its men and materials to the latter for the latter's accommodation and that the Stacey Company assumed such direct and immediate control and supervision over the linemen's crew as to establish the relation of special employer and special employee between it and said Smith. With this contention petitioner Pacific Gas and Electric Company concur, but endeavor to escape liability by inter-

posing the contention that inasmuch as the Stacey Company was a special employer it should be held solely liable for the death of Smith.

This contention seems to postulate the very issue in controversy and is obviously predicated upon the finding of the Industrial Accident Commission of the special employment of Smith. Thus we are confronted, at the outset, by the question of whether or not the evidence adduced upon the hearing before the Industrial Accident Commission warrants and supports the finding of the relation of special employer and special employee as between the Stacey Company and Smith, the deceased. [1] Of course, it goes without saying that the findings of the Industrial Accident Commission are subject to review only in so far as they have been made without any evidence whatever in support thereof. (*Southern Pac. Co.* v. *Industrial Acc. Com.*, 177 Cal. 378 [170 Pac. 822]; *Dearborn* v. *Industrial Acc. Com.*, 187 Cal. 591 [203 Pac. 112]; *Pruitt* v. *Industrial Acc. Com.*, 189 Cal. 459 [209 Pac. 31].) In short, if the facts show substantially without conflict that there is no evidence to support the finding, the Commission was without jurisdiction to make the same.

[2] There must be some evidence, upon which the finding of special employment is predicated, sufficiently showing that there was an exercise of the right of direction to the employee by the alleged special employer as to the manner and method of doing the desired work based upon the latter's right of control not only of the work to be done but of the man or men employed in the doing of the work. To establish the legal relation of special employer and special employee it must appear that either by the terms of the contract or during the course of its performance the employee of the alleged independent contractor came under the control and direction of the other party to the contract and suffered injury as the result of such direction and control. (*Famous Players Lasky* v. *Industrial Acc. Com.*, 194 Cal. 134 [228 Pac. 5]; *Employers' L. A. Corp.* v. *Industrial Acc. Com.*, 179 Cal. 432 [177 Pac. 273]; *Pruitt* v. *Industrial Acc. Com.*, 189 Cal. 459 [209 Pac. 31]; *Federal Ins. Co.* v. *Industrial Acc. Com.*, 190 Cal. 97 [210 Pac. 628].) And when determining whether, in any given case, an employee is the servant of his original master or of a party to whom he has been furnished "The test is whether, in the particular service

which he is engaged to perform, he continues liable to the direction and control of his master or becomes subject to that of the party to whom he is lent or hired." (*Coughlan* v. *Cambridge*, 166 Mass. 268 [44 N. E. 218]; *Scribner's Case*, 231 Mass. 132 [3 A. L. R. 1178, 120 N. E. 350]; *Employers' L. A. Corp.* v. *Industrial Acc. Com., supra.*) Shortly stated, the real test of what constitutes special employment may be said to be found in the character of the control and supervision exercised by the alleged special employer over the work and the employee engaged in the doing of the same.

[3] The Pacific Gas and Electric Company undoubtedly was the general employer of Smith, the deceased, at the time of his death. It had hired Smith in the first instance and was paying his wages at the time he was engaged in assisting in the work of erecting the derrick. It had sent him with other members of its crew of linemen under the direction and control of its own foreman to do a particular piece of work which it had engaged to do for the Stacey Company. There was no contract of employment, express or implied, between the Stacey Company and Smith. True it is the superintendent of the Stacey Company, at the inception of the work, indicated to the foreman of the crew of linemen what was to be done. Beyond this he did not go and aside from this there is no evidence that he ever attempted to control or assume control of the progress and completion of the work or of the men employed to do the same. This control, the evidence shows, was vested entirely in the Pacific Gas and Electric Company's foreman. The members of the linemen's crew, so far as the work of erecting the derrick was concerned, were at all times and in all respects under the immediate supervision and control of this foreman. The superintendent of the Pacific Gas and Electric Company, Reuss, testified that it was Smith's duty to do what his foreman, the Pacific Gas and Electric Company's foreman, told him to do. One Evans, foreman of said crew of linemen during the course of dismantling the derrick, testified that Smith was directly under his charge the morning of the injury and prior to that time and that he would not have permitted anyone other than his superiors in the Pacific Gas and Electric Company to interfere with or to direct Smith, the deceased. One Harris, foreman for the Pacific Gas and

Electric Company and at intervals in charge of the said linemen's crew while the derrick was being erected, testified that McPeake, superintendent of the Stacey Company, " . . . told us how he wanted it done. He told us the results he wanted but he didn't tell us how to get those results . . . several times he came to me and said 'Be careful not to drop anything on that floor.' That is the thing he impressed upon me. . . . He told us he didn't want anything dropped. It was up to me to see that nothing was dropped."

Further testimony was given by Harris showing that he was acting under the direction and control of the Pacific Gas and Electric Company and that at no time did he recognize the Stacey Company as having the power or the right to direct him as to the method and the details of the work. When a doubt came to his mind concerning the strength of the cable to be used he did not consult with McPeake. In this behalf Harris testified as follows:

"At the time we had some little discussion about the weight this mast was supposed to carry and I went to Mr. Reuss (superintendent of the Pacific Gas and Electric Company). I told him I didn't know about this but I did not feel that I wanted to be responsible if anything should break. He said, 'You better put in heavy enough the stuff we furnish so if anything breaks, it will be Mr. McPeake's stuff that will break.' I discussed with Mr. McPeake how much strain was going to be on it so I used my own judgment and put in our stuff three times as strong as any strain that would come on it."

This testimony, we think, shows that the method of doing the work was under the direction and control of the Pacific Gas and Electric Company, through its general superintendent of the linemen and its foremen. It is apparent, from the evidence adduced upon the hearing before the Commission, that the foreman in charge of the linemen's crew understood that they were at all times under the supervision and control of Reuss, superintendent of the Pacific Gas and Electric Company, and not McPeake. It is true that McPeake, superintendent of Stacey Company, stopped the progress of the work of dismantling the derrick for a few moments merely for the purpose of determining where the poles of the derrick should be placed when it was dismantled, but this fact will not suffice to warrant the inference that he assumed the

direction and control of the actual work of dismantling the derrick or that he assumed to direct and control the operations of the linemen's crew engaged in doing that work. Nor is the fact that certain general directions may have been given by the person desiring the work to be done, concerning the location and the character of the work, sufficient in and of itself to show the right or an assumption of the right to control and direct the work and the workmen employed thereon, and consequently it cannot be held that such fact, standing alone, will suffice to establish the relation of special employer and special employee. The fact remains that neither the individual members of the linemen's crew nor their foremen surrendered their "own judgment" to the direction and control of the Stacey Company's superintendent.

This review of the evidence adduced upon the hearing before the Industrial Accident Commission, as disclosed by the record before us, compels the conclusion, we think, that there was no evidence to support the finding of the Commission of the existence of a special employment between the Stacey Company and Smith, the deceased. The facts thus disclosed bring this case, it seems to us, well within the rule enunciated in the case of *Western Indemnity Co.* v. *Industrial Acc. Com.*, 172 Cal. 807 [159 Pac. 721], where this court said: "The test of 'control,' however, means 'complete control.' . . . It is well settled that, where one person is performing work in which another is beneficially interested, the latter may exercise over the former a certain measure of control for a definite and restricted purpose, without incurring the responsibilities or acquiring the immunities of a master, with respect to the person controlled . . . but in weighing the control exercised we must carefully distinguish between authoritative control and mere suggestion as to detail or the necessary co-operation where the work furnished is part of a larger undertaking." [4] The complete and exclusive control and supervision over the linemen's crew having been here exercised by the Pacific Gas and Electric Company it must be held solely responsible for the death of Smith, the deceased.

Respondents contend that the previous decisions of this court sustaining an award against both general and special employer were based "upon circumstances almost identical" with those of the instant case. We are unable to appre-

ciate the force of this contention. Those cases relied upon in this behalf are not in point and may be readily differentiated from the situation presented by the facts set forth in the record before us. The substantial distinction is that in the instant case there was no assumption of direct control and supervision, while in the cases cited by respondents there was such a direct, affirmative assumption of control and supervision over the workmen of the general employer so as to make them the special employees of the party exercising the control. In the case of *Employers' L. A. Corp.* v. *Industrial Acc. Com., supra,* the facts were these: The Riverside Portland Cement Company, engaged in the manufacture of cement, contemplated the installation of certain machinery. The plans and specifications for such work were made by the engineers of the cement company. The Wellman-Lewis Company was engaged in the business of installing and handling of large machinery and had in its employ experienced and skilled men who could do this work. An arrangement was made between the cement company and the Wellman-Lewis Company whereby the latter furnished to the former its employees, under a foreman, also in its employ, to do the required work. The cement company furnished all the materials and had the direction and control of the employees furnished, including the foreman; it kept account of the time of all such employees, who were obliged to use the time clock of said company; it had the right to require the furnishing of such additional employees as it should deem necessary and to cause the discharge of any employees whom it might regard as undesirable. This court affirmed the finding of the Industrial Accident Commission holding both parties as special and general employer, respectively, liable for the reason that the finding of the Commission was based upon the joint control by the general and special employer upon evidence which clearly showed the existence of such joint control. The evidence in the case at bar, as we have previously indicated, shows no such direction and control. In *Pruitt* v. *Industrial Acc. Com., supra,* it appears that one Conklin died as the result of injuries he received when the truck he was driving was struck by a train. Several trucks with drivers, among whom was Conklin, were hired by Pruitt to the firm of Graham Brothers. The drivers were under the entire control and direction of Graham Brothers,

who gave orders as to how and where the materials were to be hauled and the trucks otherwise used. Furthermore, there was a special agreement between Pruitt and Conklin by which the latter was to retain twenty-five per cent of the wages paid to him by Graham Brothers and he was to be charged for the upkeep of the truck, which he kept at his own home; while Pruitt was to pay for repairs and for the oil and gasoline used in its operation. In affirming the award made by the Commission against Graham Brothers and annulling the award made against Pruitt, the court said: "There is neither evidence nor finding to show that petitioner ever exerted, or had the right to exert, the slightest degree of control over Conklin in connection with his employment in the service of Graham Brothers. Yet to uphold an award against him it must so appear." In *Insurance Co.* v. *Industrial Acc. Com., supra,* the American Stevedoring Company, organized by certain lumber dealers to furnish lumber handlers, under an arrangement with the lumber companies, sent crews of lumber handlers to a company, as requested, to perform the required work. The men were hired by, paid by and discharged by the stevedoring company, but were under the full control and direction, as to the method of doing the work, of the company for whom they happened to be working. The lumber companies some time subsequent, when the purpose of the establishment of the stevedoring company had been practically accomplished, hired the men and placed them on the pay-roll of the stevedoring company. The decedent was hired by the stevedoring company and was sent to the Pope and Talbot Company yards, where, while acting under the complete control and direction of this lumber company, he was injured. The finding of the Commission holding both special employer and general employer liable was affirmed. The court said: "Nor can it be questioned that he was a special employee of Pope and Talbot. The evidence shows he worked in its yard exclusively, subject to its entire direction and control in the performance of his duties." The control and direction exercised by the special employer in that case clearly differentiates it from the instant case. In *Famous Players Lasky* v. *Industrial Acc. Com., supra,* two pilots were furnished by the Williams Aircraft Corporation to the Lasky company to be used in producing a motion picture. The only direc-

tions given to the pilots were that they were to fly to a certain place and there report to the Lasky corporation for instructions. The pilots, upon arriving on the lot where the picture was to be filmed, were directed by the representatives of the Lasky corporation to look through the camera to get its range of vision and to direct their flight so as to come within the picture. A flight was made, but being too high the pilots were directed to fly closer to the ground. After some demurring between themselves, the pilots complied with this direction and in the course of the flight the accident occurred in which one of the pilots was injured. Although two representatives of the Williams Aircraft Corporation were present during all the time when the directions were given to the pilots by the representatives of the Lasky corporation, they interposed no objection and exercised neither control nor direction over either of the pilots. All of the instructions to the pilots as to the time, place, and method of their flight were given to them by the Lasky corporation representatives. The direction and control exercised by the Lasky corporation was never present in the instant case. The two Industrial Accident Commission decisions, in which petitions for a writ of review were denied, cited by respondents in support of their contention are, also, beside the point presented by the instant case and are clearly distinguishable. In both cases, *Fidelity & Casualty Co.* v. *Industrial Acc. Com.*, L. A. No. 2754, and *Gordon & Harrison* v. *Industrial Acc. Com.*, L. A. No. 8323, there was such an exercise of direction and control as to establish the special employment found by the Commission.

The conclusion we have reached upon the principal point in the case renders unnecessary a discussion of whether or not the award should be made against the insurance carrier to whom the premium for the insurance of the deceased has been paid.

The award against the Federal Mutual Liability Insurance Company is annulled and the award against the Pacific Gas and Electric Company is affirmed.

Waste, J., Richards, J., Lawlor, Acting C. J., Shenk, J., Seawell, J., and Houser, J., *pro tem.*, concurred.

Rehearing denied.