[Civ. No. 6599. First Appellate District, Division Two.—April 29, 1929.]

JOHN E. CALLAHAN et al., Plaintiffs, Respondents and Appellants, v. GEORGE HARM, Defendant and Respondent; F. M. HODGE et al., Defendants and Appellants.

W. I. Gilbert and Lasher B. Gallagher for Appellants.

Peckinpah & Carter, David E. Peckinpah, F. W. Docker, Frank J. Creede and W. J. O'Connor for Respondents.

BURROUGHS, J., *pro tem.*—This is an action for personal injuries. The cause was tried with a jury and a verdict returned in favor of the plaintiff and against the defendants F. M. Hodge, John Kwis and H. S. Rose, copartners doing business under the firm name and style of San Joaquin Valley Transportation Company, and against the defendant W. B. Lott in the sum of $4,500. The jury also returned a verdict in favor of the defendant George Harm. The transportation Company made a motion for a nonsuit, which was denied. It also made a motion for judgment notwithstanding the verdict, which was denied and judgment was thereupon entered in conformity with the verdict. The Transportation Company appeals from said judgment in so far as it affects them. The plaintiff has appealed from the judgment in favor of the defendant Harm. Both appeals are before the court upon one record and will be considered together. The appellant Transportation Company presents four grounds of alleged prejudicial error which may be considered together. The first of these is that the evidence fails to disclose any negligence on the part of the defendants. Second, even conceding that there is evidence of

negligence, the plaintiff was guilty of contributory negligence. Third, the court erred in denying its motion for a nonsuit, and fourth, in refusing to enter judgment in favor of the appellant notwithstanding the verdict.

A proper consideration of these objections requires a statement of the evidence. The record discloses that on the first day of July, 1925, the plaintiff John E. Callahan was an employee of the Edward A. Soulé Company in Fresno; that said company was engaged in the business of furnishing to the general public structural iron; that the defendant George Harm was engaged in the general trucking business in the city of Fresno; that Hodge, Kwis and Rose were copartners engaged in the business of hauling freight from Fresno to other points in the San Joaquin Valley and were operating said business under the fictitious name of San Joaquin Valley Transportation Company. They will be hereinafter referred to as the Transportation Company. The defendant H. B. Lott was the driver of a motor-truck belonging to the defendant Harm. That defendant Harm employed and paid the wages of defendant Lott to operate said truck; that Harm had a contract with the Transportation Company by which the truck in question with the driver Lott was rented to the Transportation Company for hauling freight for the latter within the city limits of Fresno; that they paid Harm the sum of $260 per month for the services of said truck and man. It was also the duty of Harm to furnish all the gasoline and oil for said truck and to keep the same in repair. The evidence also discloses that Lott received his orders from the defendant Rose; that the Transportation Company had an office in what is called the Union Terminal Depot in Fresno and that Lott had a box in said office, where orders were placed for him by Rose instructing him where to go and get freight. On the morning of July 1, 1925, Lott found an order in his box to go to the place of business of the Edward L. Soulé Company and haul some structural iron to the Union Terminal Depot for shipment to Bakersfield over the line of the Transportation Company. Lott took a trailer belonging to the Transportation Company and hooked it to the rear of the truck belonging to Harm and thus equipped went to the place of business of the Soulé Company. Upon his arrival there he stopped his

truck on the opposite side of the street from the entrance door of the shed of the Soulé Company where the structural iron was to be loaded on to the trailer. He thereupon detached the trailer from the truck and proceeded to back it by hand across the street to the entrance of the shed. The street was level. The trailer weighed about three tons and was not equipped with brakes. When Lott had succeeded in pushing the trailer to the entrance of the door of the shed he called upon a man by the name of Lang and the plaintiff Callahan, both of whom were in the employ of the Soulé Company, to help him lower the trailer down a concrete incline to the floor of the Soulé shed. Previous to Lott's calling upon the plaintiff Callahan and Lang to help him both men had been directed by the manager of the Soulé Company to help load the iron. When Lang and Callahan appeared Lott ordered Callahan to pick up a board which was lying near and block the wheel of the trailer. Callahan thereupon picked up the board, went to the rear of the trailer and with the aid of the board under the rear wheel attempted to block the trailer. He held the board, which was about six or eight feet long, under the rear wheel at an angle of about forty-five degrees. Lott then took Lang to the front of the trailer and together they pushed it over the entrance and down the incline leading to the floor of the shed. Neither Lang nor Lott could see Callahan when he was at the rear of the trailer nor could Callahan see them. As long as the front wheels of the trailer were on the level with the street there appeared to be no trouble in the descent of the trailer into the shed, but as soon as Lang and Lott pushed the front wheels from the street on to the incline the trailer began to gather momentum and Lott and Lang were holding back on it. At this juncture plaintiff Callahan called to Lang and Lott "to hold her." Both men immediately let go of the trailer, went to the rear and found plaintiff Callahan on the ground with the board across his leg and the trailer on the board. It further appears that Lott was an experienced driver. He had been engaged in the business of driving and handling trucks and trailers for a period of seven or eight years and was familiar with the handling of both of them. The plaintiff had had no experience whatever. The trailer

weighed about three tons and was not equipped with brakes. These facts were known to Lott and unknown to Callahan.

The evidence further discloses that the plaintiff was seriously injured and as there is no question raised as to the amount of damage awarded it becomes unnecessary to set forth the evidence relating to the nature and character of the injury.

It is claimed by said appellant that under this evidence there was no justification for the implied finding of the jury that the defendant Lott was negligent, but if such a holding is possible the evidence also shows that the plaintiff was guilty of contributory negligence and therefore in either event plaintiff was not entitled to a verdict.

■ In the determination of this question it must be borne in mind that this court is not sitting as a jury, its only function is to determine whether there is substantial evidence to support the verdict. If so, then the question must be determined adversely to the appellant. Lott was familiar with trucks and trailers. He knew that this particular trailer weighed upward of three tons and, further, that it was not equipped with brakes. He ordered the plaintiff to take the board and block the wheel. Thereafter, without further inquiry or investigation and at a point where he could not see plaintiff Callahan, he proceeded to roll the trailer down the incline and he and Lang began to hold it back. He said this was not difficult to do; that the trailer seemed to go down without trouble. He heard the plaintiff call to them to hold it, but instead of holding it both Lott and Lang let go of the trailer and went to the rear, where they found plaintiff on the ground with the board on his leg and the trailer on it. As illuminative of the attitude of the jury on the question of negligence, in addition to the general verdict, they answered certain interrogatories, one of which was: "Q. What act or acts did Lott do in connection with the management of the trailer that you found to be negligence? A. Lower the trailer down the incline without sufficient help or equipment." This answer we believe covers Lott's knowledge of the trailer, its lack of brakes and implied gross carelessness in ordering one who the evidence shows had no knowledge of these things to take a position of dan-

ger in lowering the trailer. We are of the opinion that the evidence is sufficient to support the verdict of the jury.

We are also of the opinion that the claim of said appellant, that plaintiff was guilty of contributory negligence, is not sustained by the evidence. Defendant Lott was in charge of the work of lowering the trailer. He ordered the plaintiff to take the board and block the wheels and as heretofore stated plaintiff was unfamiliar with the handling of the trailer and his conduct under such circumstances did not in itself constitute contributory negligence.

There being sufficient evidence to sustain the verdict of the jury the court was also right in denying the motion for a nonsuit and denying the motion for a judgment notwithstanding the verdict. The authorities cited by appellant, *Diamond* v. *Weyerhaeuser*, 178 Cal. 540 [174 Pac. 38], *Depons* v. *Ariss*, 182 Cal. 485 [188 Pac. 797], *Hagenah* v. *Bidwell*, 46 Cal. App. 556 [189 Pac. 799], are authority upon the point that negligence is not presumed from the mere fact of injury, but are not applicable to the facts of this case.

It is next claimed by said appellant that the evidence is insufficient to justify the finding that Lott was the servant of the Transportation Company. A brief epitome of the evidence on this subject shows that defendant Harm was in the truck business in Fresno; that he hired the truck and driver to the Transportation Company by the month and at a monthly rental of $260. Harm furnished the gasoline and oil and kept the truck in repair and also paid Lott his wages. The truck and driver were turned over to the Transportation Company and Lott received his orders from defendant Rose, one of the members of the Transportation Company. Lott had an office with the Transportation Company and his orders were placed by Rose in a certain pigeon-hole in a desk in that office. Harm gave no instructions whatever to Lott. On the day of the accident Lott took an order from the pigeon-hole instructing him to go to Soulé & Company's place of business and haul some structural iron to the Transportation Company depot for shipping over its line to Bakersfield. Lott took a trailer belonging to the Transportation Company, attached it to the Harm truck and drove to the Soulé place and proceeded to get ready to load

some iron on the trailer preparatory to taking it to the depot of the Transportation Company. All of the foregoing acts were done in carrying out the order of Rose and solely in connection with the business of the Transportation Company. Defendant Harm was in no way interested in the transaction, except to the extent of his monthly remuneration. He had no control or direction over the defendant Lott in carrying out the business of the Transportation Company. Under similar circumstances it has been held that the general employer was not responsible for the negligence of his employee, but that such responsibility rested on the special employer and we therefore hold that the implied finding of the jury that Lott was a servant of the Transportation Company is amply sustained by the evidence. We believe the case of *Pruitt* v. *Industrial Acc. Com.*, 189 Cal. 459 [209 Pac. 31], is in point. It was there held that an award against the owner of a motor-truck for the death of the driver while the truck and driver were under hire by a third party was unjustified in the absence of any evidence that the owner exercised the slightest degree of control over the driver in connection with the employment by the third party. This doctrine is also laid down in *Stacey Bros. Co.* v. *Industrial Acc. Com.*, 197 Cal. 164 [239 Pac. 1072]; *Famous Players Lasky Corp. et al.* v. *Industrial Acc. Com.*, 194 Cal. 134 [34 A. L. R. 765, 228 Pac. 5]; *Independence Indemnity Co.* v. *Industrial Acc. Com.*, 203 Cal. 51 [262 Pac. 757]. The cases cited by appellant are distinguishable from the case at bar. In *Western Indemnity Co.* v. *Pillsbury*, 172 Cal. 807 [159 Pac. 721], cited by appellant, one Stevens, who was engaged in the business of "teaming and grading," offered to furnish for a compensation of six dollars per day teams and drivers to a contractor engaged in performing work for the city and county of San Francisco in connection with its municipal railway line. Thereafter Stevens was notified by the contractor that he required a team. One was furnished, Stevens driving it himself. About a week later he furnished another team and driver for six dollars per day, employing the driver himself and paying him three dollars per day. Stevens was injured and demanded compensation. The Industrial Accident Commission found that Stevens was an employee of the contractor. After examin-

ing the evidence the supreme court annulled the award and held that under the evidence the power possessed by the foreman of the railway contractor over Stevens was not such control of Stevens as to make his status that of an employee. In *Billig* v. *Southern Pacific Co.*, 189 Cal. 477 [209 Pac. 241], also cited by appellant, it was held that the hirer of a truck and driver who was a general employer was liable for the negligence of his employee where the evidence showed without conflict that such employer never relinquished the right of control of the driver and truck while it was en route between given points hauling gasoline for the special employer when the accident occurred, and in addition that the general employer alone had authority to discharge the driver. In the case at bar the truck and driver were engaged solely in the work of the Transportation Company and the driver was acting entirely under the direction of Rose, one of the members of the Transportation Company, and, further, at the time of the accident Lott, the driver, was using a trailer belonging to the company and not the truck belonging to the defendant Harm.

Without further comment on the authorities cited, we are satisfied that Lott was the special employee of the Transportation Company and as such the Transportation Company was liable for Lott's negligence and not Harm.

It is next claimed that plaintiff was a volunteer so far as the Transportation Company was concerned and that it owed him no duty except not to wilfully injure him. In support of this claim counsel have cited *Giannini* v. *Campodonico*, 176 Cal. 548 [169 Pac. 80]. In that case it was held that a stableman performing only menial duties had no implied authority to delegate his work or engage another to assist him and his request to a boy of fourteen years to clean the stable could not impose any additional duties on the owner. But we are of the opinion that *Fike* v. *San Joaquin Light etc. Corp.*, 73 Cal. App. 712 [239 Pac. 344], states the rule applicable to the facts of the case at bar. In that case Fike, the deceased, was an employee of the Valley Ice Company engaged in general work around the plant. The defendant had high-power electric wires on the roof of the building occupied by the Valley Ice Company. The roof needed patching because

of some holes which had been drilled in the roof by the defendant in the course of arranging its electrical equipment on the roof of said building. Nichols, the foreman of the defendant, requested Whitney, the foreman of the Ice Company, to have these holes closed up, which Whitney agreed he would have done. Whitney thereupon sent Fike to the roof to do the work. Fike went upon the roof to perform this service; came in contact with a live wire and was killed. It was held in response to the same plea here made that the power company was liable for Fike's death.

In the case at bar Callahan was directed by his own foreman to assist in loading the trailer. When Lott, the employee of the Transportation Company, arrived on the scene, he directed Callahan to help him lower the trailer and told him just how to do it and in following these orders Callahan was injured. We think, under the circumstances, Callahan was not a volunteer under the holding in the case last cited and the point is not well taken.

■ It is contended by the Transportation Company that Lott, Lang and Callahan were engaged in a joint enterprise and under such circumstances even though Lott was negligent in the management, operation and control of the trailer his negligence is imputed to the plaintiff because plaintiff was actively and physically participating in the lowering of the trailer, the very act which resulted in his injury. As we understand, the rule on this subject is concisely stated in 20 Ruling Case Law, section 122, page 149, where it is said: "If two or more persons unite in the joint prosecution of a common purpose under such circumstances that each has authority, express or implied, to act for or in respect to the control of the means or agencies employed to execute such common purpose, the negligence of the one in the management thereof is imputed to the others." This rule is cited with approval in *Curran* v. *Earle C. Anthony, Inc.*, 77 Cal. App. 462 [247 Pac. 236]. While it is true as asserted by appellant that Callahan participated in lowering the trailer, he was acting under the direct order of Lott, the agent of appellant, and he had no right whatever to direct the movements of Lott or Lang with respect thereto. The point is not well taken.

■ The next objection to the judgment may be stated in the language of the appellant Transportation Company, as follows: "If Lott was a servant of Hodge, Kwis and Rose and authorized to request and arrange for the assistance of Callahan, then Callahan became the special employee of the partnership and sole remedy is compensation." We are of the opinion that the claim is answered by the case of *Murray* v. *Dwight*, 161 N. Y. 301 [48 L. R. A. 673, 55 N. E. 901], where the same claim was made. In that case the servant of the truckman had been sent with a horse of his master to the warehouse to use the horse in operating a derrick for hoisting goods under the direction of the foreman for the warehouseman and was injured through the negligence of the warehouseman's employees. It was contended that the truckman's servant. became the fellow-servant of the employees of the warehouseman and was thus barred from recovering, but it was held that he was not a fellow-servant. We think the same rule applies to the relation of Callahan to the Transportation Company. He was not a fellow-servant of Lott and therefore would not be entitled to compensation as claimed by the appellant. ■ Appellant contends that the special findings of the jury and their general verdict are in conflict. The special findings referred to are, "What act or acts did Lott do in connection with the management of the trailer that you found to be negligence? Answer: Lowering the trailer down the incline without sufficient help or equipment. 2. Was there any danger which was apparent to a person using ordinary care for his safety in or about the lowering of the trailer into the shed? . . . Answer. No." If we have correctly construed the effect of the evidence in this case on the question of negligence, then there is no inconsistency between said special findings and the general verdict of the jury.

■ One further point requires consideration. It is claimed that the court erred in refusing to give a certain instruction offered by the defendant Transportation Company. This instruction deals with the liability of a general employer where he has rented an instrumentality along with the personal services of his employee. But when this accident occurred the instrumentality being used by Lott belonged to the Transportation Company and not to Harm,

the general employer. The instruction was therefore not applicable to the facts of the case. What we have heretofore said applies with equal force to the appeal by the plaintiff from the judgment in favor of defendant Harm.

No good reason has been shown why the judgment should be disturbed and it is therefore affirmed.

Sturtevant, J., and Koford, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 29, 1929, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 27, 1929.

All the Justices concurred.