[Civ. No. 1816.   Fourth Appellate District.—August 19, 1936.]

A. A. WINTHER et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION OF THE STATE OF CALIFORNIA and MIKE ROBLES, Respondents.

Keith & Creede and Edmund D. Leonard for Petitioners.

Everett A. Corten and E. J. Seawell for Respondents.

JENNINGS, J.—This proceeding in *certiorari* was instituted by petitioners who seek thereby to annul an award made by respondent Industrial Accident Commission in favor of respondent Mike Robles.

The transcript of the testimony which was given before the referee of the respondent commission discloses that the following facts form the evidentiary basis for the award which is here sought to be annulled: Petitioner Winther owns a 34-acre ranch near Lindsay, California, on which he grows olives. At some time prior to October 31, 1935, Winther entered into an oral contract with one Rueda, whereby the latter agreed to pick the entire crop of olives from the trees on the former's ranch and to transport the olives when picked to a packing house. For the work of picking and hauling the olives Winther agreed to pay Rueda at the rate of $16 per ton. Contracts of this same character had been made between these parties for several years prior to the year 1935. Rueda hired a number of men to assist him in the work of picking the olives. He agreed to pay these men for the work which they did at the rate of 26 or 27 cents per box. Among the men who were thus hired by Rueda was the respondent Mike Robles. On October 31, 1935, Robles rode in his own automobile from his home in Porterville to the Winther ranch and began to pick olives. He had not theretofore met Winther, but became acquainted with him after he arrived at the ranch. Rueda was not himself present at the ranch during the morning of the above-mentioned date, although four of his sons were present and were engaged in picking the olives. At various times during the morning

Winther walked through the olive orchard and told several of the workmen, including Robles, to pick the olives clean and to take the leaves from the boxes in which the olives were deposited as they were removed from the trees. Rueda testified that Winther told him "to do the work right". Winther testified that Rueda hired the olive pickers, that Rueda alone had the power to discharge them, and that he had no control over them although he stated that "the understanding was if I didn't want the men he would not bring them back". Rueda testified that Winther had the right to discharge Robles if he did not like his work. This witness also testified that "Winther had told him which men to fire but he just hired them." He also testified that when he was present he "was the boss" and that in his absence his boy occupied this position. Robles testified that no boss was present during the morning of October 31, 1935, and that he took his orders from Winther. These orders consisted of the direction that he should take the leaves from the boxes, pick the olives clean, and watch the boxes. He stated that Winther was present and gave him this direction before anyone commenced to pick the olives and that Winther appeared again about half an hour after the men had begun to pick olives and told some of the other men to pick clean. At about 9:30 in the morning of October 31, 1935, while Robles was engaged in the work of picking olives he fell and sustained the injuries for which the award here sought to be annulled was made.

It is the contention of petitioners that the above-mentioned facts indicate a lack of evidentiary sufficiency to support the award. In giving consideration to this contention it may be observed that the problem which was presented for solution by the respondent Accident Commission was the relationship which existed between the injured man, Robles, and the petitioner Winther. The referee found and by approving his findings the commission found that at the time the injuries were sustained Robles was an employee of Winther. It is apparent from the record that the factor which is of primary importance is the relationship which Rueda bore to Winther. If it may fairly be declared that there was evidence which tended to show that this relationship was one of employment the award is sustainable. If, however, an analysis of the evidence impels the conclusion

that Rueda was an independent contractor the award was improper and must be annulled. (*Western Ind. Co.* v. *Industrial Acc. Com.*, 172 Cal. 766 [158 Pac. 1033].) This must be true because the evidence showed without conflict— and there is no contention to the contrary—that Robles was primarily an employee of Rueda. Rueda hired him. Rueda agreed to pay him and did pay him for. his services in picking the olives a specified sum per box. Rueda had the power to discharge him. Whatever relationship existed between Robles and Winther came to pass through the interposition of Rueda.

The term "Independent contractor" has been defined as "one who renders service in the course of an independent employment or occupation, following his employer's desires only in the results of the work, and not the means whereby it is to be accomplished". (*Moody* v. *Industrial Acc. Com.*, 204 Cal. 668, 670 [269 Pac. 542, 60 A. L. R. 299].) ▮ In arriving at a determination of whether one person is an employee of another or whether the status of the former is that of an independent contractor, one of the best tests to be applied to the factual situation which is presented is the right of control. (*Hillen* v. *Industrial Acc. Com.*, 199 Cal. 577 [250 Pac. 570].) When the essential object of the employment is the performance of certain work the relation of master and servant does not exist unless the employer reserves the right to direct the mode and manner in which the work shall be done. (*Western Indemnity Co.* v. *Pillsbury*, 172 Cal. 807 [159 Pac. 721].)

▮ It is our conclusion that the relationship which existed between Winther and Rueda was not that of employer and employee but that the latter was an independent contractor. So far as appears, the contract between these parties which formed the basis for whatever relationship existed between them was one whereby Rueda agreed to pick and haul the entire crop of olives which was growing on Winther's land and the latter agreed that he would pay for this service at the rate of $16 per ton. This was a simple oral contract and there is nothing in it to indicate that Winther was interested in the slightest degree in the means by which the work should be done or in the details of its accomplishment. So far as appears, he was interested solely in the final result

to be attained which was the picking and hauling of the entire crop of olives on his ranch.

In support of their contention that the commission's award has sufficient evidentiary support to sustain it, respondents rely on certain circumstances disclosed by the record. One of these circumstances is the fact that during the morning of October 31, 1935, and prior to the occurrence of the accident, Winther walked through the olive orchard and on two different occasions directed the olive pickers to pick the fruit clean and to remove all leaves from the boxes in which the olives were being deposited. A second circumstance is presented by certain evidence which tended to show that Winther reserved the right to discharge any olive picker whose work was not satisfactory to him.

With respect to the first of the above mentioned circumstances it should be observed that it was long ago decided that the meaning of the word control, as it is used in the phrase ''right of control'', is complete control. (*Western Indemnity Co.* v. *Pillsbury, supra.*) In *Barton* v. *Studebaker Corp. of America,* 46 Cal. App. 707, 717 [189 Pac. 1025], it is said: ''The test of control in such cases means 'complete control' or the full and unqualified right to control and direct the details of or the means by which the work is to be accomplished.'' In *Peters* v. *California Building-Loan Assn.,* 116 Cal. App. 143, 151 [2 Pac. (2d) 439], this court quoted with approval certain language from Labatt on Master and Servant, wherein the learned author of this treatise refers to the control which is exercisable by the employer as ''authoritative control'' with respect to the manner in which the details of the work are to be performed. Whether the control which an employer has the right to exercise over the manner in which the work is to be performed is best expressed through its modification by the word ''authoritative'', or by the word ''unqualified'' or by the word ''complete'', it is clear from the decisions that it must be a control which reaches into the details of performance and reserves to the employer the right to direct the manner in which these details are to be carried out. Such control is not manifested by a ranch owner who has contracted with another to pay a certain sum per ton for the picking of fruit and who does no more than direct the employees of the person with whom he has made the contract to pick the fruit clean and remove

leaves from the field boxes. When one person is performing work in which another is beneficially interested, the latter is permitted to exercise a certain measure of control for a definite and restricted purpose without incurring the responsibilities or acquiring the immunities of a master, with respect to the person controlled. (*Western Indemnity Co.* v. *Pillsbury, supra; Moody* v. *Industrial Acc. Com., supra.*) Since Rueda's contract obligated him not only to pick the olives but also to deliver them to a packing house, Winther's admonition to Rueda's employees to pick clean and remove leaves from the boxes indicated nothing more than an interest in the final result contemplated by the contract. Such a direction is not in the least indicative of that complete and unqualified control which the law contemplates shall be exercised by one whose interest is not confined merely to the result to be consummated but extends to the very details and the mode by which such details are accomplished.

The circumstance that Winther reserved the right to discharge any olive picker is not, in our opinion, sufficiently indicative of a right of authoritative control to warrant a finding that Winther occupied the status of Robles' employer. In the first place, the evidence submitted to the referee entirely failed to show that Winther had the right arbitrarily to discharge the men whom Rueda had hired. Winther testified positively that he could not have gone into the orchard and discharged any of the men if he had so desired. He did, however, state that the understanding between him and Rueda was that if he did not want the men Rueda would not bring them back. He further testified that he never discharged any of Rueda's men. Rueda testified that Winther had the right to discharge Robles if he did not like his work.

It is our conclusion that the effect of the above-mentioned testimony is that Winther retained the right to discharge any olive picker whom Rueda had hired if the man's work was not satisfactory to Winther. Whether the discharge could be accomplished directly by Winther without Rueda's interposition is relatively unimportant. The important feature is that Winther evidently could bring about the discharge of any man whose work was not satisfactory to him.

The right of discharge is a fact that undeniably has a bearing on the question of authoritative control. If such right is unlimited so that it may be exercised arbitrarily, it is

a fact which obviously points in the direction of that completeness of control which the decisions recognize as "one of the best tests" of the relationship between individuals in the matter under discussion. (*Hillen* v. *Industrial Acc. Com.*, 199 Cal. 577, 582 [250 Pac. 570].) However, if the right of discharge is limited, as it was here, by the important qualification that it could be exercised only in the event of the employee's work being unsatisfactory, its importance as a factor pointing to authoritative control is greatly diminished. Even one who is concededly interested primarily in the final result of work has an interest in the quality of workmanship which is reflected in the finished product.

A third circumstance which is urged as sufficient evidentiary support for the award is presented by the testimony of the witness Ariamo, who was an olive picker hired by Rueda, as was Robles, to the effect that he took orders from Winther who was "the only boss he knew". With respect to this evidence it must be noted that the witness testified that the orders which he received from Winther were to pick clean and fill the boxes, otherwise he would have to discharge him. The witness further testified that his reasons for thinking that Winther was the boss were because Winther was at the olive orchard and instructed him to fill the boxes and do a clean job, and it was his opinion that the boss was the man who was on the place.

The above-mentioned evidence, in so far as it relates to Winther's status as superintendent or manager, is obviously a pure conclusion of the witness and therefore entirely unimportant as evidence. The remainder of the evidence which relates to the orders or directions given to the witness by Winther is precisely similar to the testimony of Robles which has heretofore received consideration.

Analysis of all the evidence bearing on the matter of the relationship which existed between Winther and Rueda which was submitted to the commission's referee impels the conclusion that it is insufficient to sustain the finding that Robles was an employee of Winther and that the award made by the respondent commission in favor of Robles was improper.

The award is therefore annulled.

Barnard, P. J., and Marks, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 15, 1936.