[L. A. No. 18516. In Bank. Feb. 17, 1943.]

L. H. SILBERMAN, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, IRVIN CLARK et al., Respondents.

Joseph H. Dasteel for Petitioner.

Everett A. Corten and J. Gould for Respondents.

SHENK, J.—The Industrial Accident Commission held the petitioner, Louis H. Silberman, liable as the special employer of Irvin Clark, a laborer who was injured while engaged in loading rails onto a truck. Mills Construction Company was held liable as general employer of Clark. On this proceeding in review the petitioner seeks the annulment of the award against him as special employer on the sole ground that there is no substantial evidence to support the commission's finding of special employment.

On or about June 18, 1941, the petitioner entered into a written contract with the city of Pasadena whereby he agreed to remove streetcar rails from certain streets in the city and to repave the portions of the street from which the rails had been removed. On June 25, 1941, the petitioner entered into a written sub-contract with Theodore Cohn, doing business as the Mills Construction Company, under which the latter agreed to remove the rails from the streets in accordance with the contract between the petitioner and the city of Pasadena.

The petitioner sold the rails to the Dulien Steel Company and agreed to deliver them F.O.B. truck at the place where the rails were taken up. The contract between the petitioner and the Mills Company contained no provision with reference to the loading of the rails on the trucks. A dispute arose between them on this point, and it was orally agreed that the

Mills Company would obtain the services of men to load the rails on the trucks to be supplied by the petitioner, and that the petitioner would reimburse the Mills Company for the cost of loading the rails on the trucks, including wages, liability, compensation and unemployment insurance, gas, oil and overhead.

The Mills Company began the work of excavating and removing the rails on or about July 1, 1941. In the course of the work and on October 30, 1941, a foreman of the Mills Company, telephoned an employment agency to secure a laborer. Irvin Clark was sent and was told to report to the superintendent of the Mills Company. Upon reporting for work and not finding the superintendent, he was directed by the foreman to begin loading rails on a truck. Clark had been working at the task assigned him less than one hour when a rail slipped and fell on his leg, causing the injury for which he claimed compensation. He was paid for one day's work by the Mills Company which in turn billed petitioner for the amount.

The petitioner contends that the work of Clark was undertaken by him merely as one of the obligations of the Mills Company under the terms of the sub-contract; that his services were not subject to the direction or control of the petitioner; that no right to direct or control Clark's activities was reserved to the petitioner and that the only obligation which the petitioner assumed was to pay for his services.

The rule generally is stated in *Stacey Bros. etc. Co.* v. *Industrial Acc. Com.*, 197 Cal. 164 [239 P. 1072], as follows: "To establish the legal relation of special employer and special employee it must appear that either by the terms of the contract or during the course of its performance the employee of the alleged independent contractor came under the control and direction of the other party to the contract and suffered injury as the result of such direction and control."

In Campbell on Workmen's Compensation, volume I, section 457, it is said: "The requisites for imposing liability upon both general and special employer are: (1) a loaned employee situation, in which an employee of one is sent to perform labor for another; (2) a common or joint participation in this work and benefit to each for the rendition; (3) some power, not necessarily complete, of direction and control over details in each." It has been held that the payment of wages is not of itself sufficient to establish that the recipient thereof

is the servant of the one paying the same. (*Independence Indemnity Co.* v. *Industrial Acc. Com.*, 203 Cal. 51 [262 P. 757].) But in addition to that circumstance the commission points to other facts from which it is claimed reasonable inferences may be drawn to establish the relationship of special employment.

It is first pointed out that under his contract with the city the petitioner was obligated to remove the rails from the streets completely. Whether the Mills Company, under the sub-contract, was required to load the rails on to trucks was a subject of dispute which resulted in the petitioner's assuming the cost of that work. The petitioner then, under a separate contract with the Dulien Steel Company, bound himself to deliver the rails on board the trucks. From all that was done it may fairly be inferred that the job of loading the rails on the trucks was the petitioner's job.

It is next pointed out that for the purpose of seeing that the Mills Company carried out its part of the contract the petitioner kept a representative in the person of David S. Friedner at the place where the work was being performed. Mr. Friedner testified that he was assigned to the job by the petitioner as a "peace-maker for all concerned"; that it was his duty to pay attention to the requests of the city in the performance by the Mills Company of its contract, as those requests were communicated to him by the city's representative; that when he was notified "of anything that the city might require that is not done in order" he would "suggest" to Mr. Urban, the superintendent of the Mills Company, what the city required, and that he occasionally watched the loading of the rails and counted them. Mr. Charles T. Schultz, a city street inspector, testified that whenever he failed to get results from the Mills Company's foreman he would inform Mr. Friedner of his requirements and would be assured by Mr. Friedner that "he would have it taken care of."

It is urged by the petitioner that the evidence of his control of the activities of the Mills Company and its employees shows a lack of authoritative control and no more than suggestive control; and that a certain measure of suggestive control by an independent contractor may be exercised without becoming liable as a special employer, citing *Winther* v. *Industrial Acc. Com.*, 16 Cal.App.2d 131 [60 P.2d 342]. The argument may have some force with reference to right of control, exercised or reserved, on the part of the petitioner over operations under the sub-contract having to do with the

removal of the rails from their embedded positions in the street and the repavement of the surface. But with reference to the performance of the task of furnishing trucks and loading them with the rails, which was ultimately the petitioner's obligation, the evidence of control puts on a more authoritative aspect. Mr. Campbell also observes (vol. I, § 463) that it is frequently a difficult question whether the contractor "has overstepped that indefinite boundary from mere suggestive into authoritative control." Here the measure of control which the petitioner as the responsible party had the right to exercise over men doing the work which he was bound to do under his contract with a third party was much more than suggestive, in fact it could be no less than authoritative. The issue of control was the crucial one in the proceeding before the fact finding body and it may properly be said that the commission was justified in resolving it against the petitioner.

The award is affirmed.

Gibson, C. J., Carter, J., Traynor, J., and Peters, J. pro tem., concurred.

CURTIS, J.—I dissent.

The majority opinion holds that petitioner Silberman, as the special employer, is jointly liable with the Mills Construction Company, the general employer, for injuries sustained by an employee of the general contractor.

It was the duty of Silberman to load the rails, referred to in the opinion, after they were removed from the streets of the city of Pasadena. The Mills Construction Company agreed to load the rails and Silberman agreed to pay the company the entire expense incurred by it in doing said work, including the wages of the men employed, "liability, compensation insurance, wage tax and overhead fees for handling this material." The company hired Clark and all other men on the job, paid them their wages, and took out compensation insurance covering them. Silberman paid the company in full for these charges. He had no control over any of the employees of the company. As stated by the commission in its answer: (page 6) "For the purpose of seeing that the Mills Construction Company carried out its end of the contract, the petitioner (Silberman) kept a representative in the person of David S. Friedner at the place where the work un-

der the contract was being performed.'' But neither Silberman nor his representative had any control over any of the company's employees. The representative was simply to see that the company performed its contract.

This court has held ''. . . that for liability to attach to the the special employer the injured person must have been at' the time of the accident subject to the direction and control of such special employer, for it is this right to control and direct the activities of the employee that gives rise to the status of special employer.'' (*Independence Indemnity Co.* v. *Industrial Acc. Com.*, 203 Cal. 51, 55 [262 P. 757].)

The commission found that Mills Construction Company was insured and that Silberman was not insured. He evidently acted upon the assumption that as long as he was paying the Mills Construction Company for insuring the men employed by it on the job, it was not necessary for him to pay double insurance. As a result of the opinion, Silberman, although he has paid for full compensation insurance to protect the employees of the company, nevertheless is still held personally liable for injuries sustained by one of them.

In my opinion the award against Silberman should be annulled.

Edmonds, J., concurred.